BLAKE DUPREE, RECEIVER, v. JOSEPH TAMBORILLA.

Decided January 17, 1902.

**1.—Negligence—Electric Light Pole—Injury to Servant—Evidence.**

Evidence showing that the rods supporting an electric lamp on a pole had become rusted after several years use, so that a trimmer using them to support himself while attending to the lamp was injured by their breaking, and that the receiver of the electric company had never had the rods inspected, was sufficient to show actionable negligence.

**2.—Same—Contributory Negligence.**

See evidence held not to show that a servant was guilty of contributory negligence in relying for the support of his weight on the iron rods on an electric pole.

**3.—Same—Servant Not Charged with Negligence.**

That the servant was required to report by entries in a certain book any defects that he saw on the lines did not preclude his recovery for the injury, where he was not instructed to look for defects not observable without the application of some test, and was not furnished with appliances to test the rods.

**4.—Same—Evidence Not Too Remote in Time.**

Evidence by a witness as to the mode of ascending and descending the poles in order to trim the lamps while he was employed by the electric light company several years before, was admissible where it appeared that plaintiff himself had acquired most of his experience under the company before the defendant receiver was appointed, and it did not appear that the receiver had made any change as to the poles or the manner of climbing them.

Error from Harris. Tried below before Hon. William H. Wilson.

*Hutcheson, Campbell & Hutcheson,* for plaintiff in error.

*W. C. Oliver* and *James B. & Chas. J. Stubbs,* for defendant in error.

GILL, ASSOCIATE JUSTICE.—Joseph Tamborilla brought this suit against Blake Dupree, the receiver of the Citizens Electric Light and Power Company, of Houston, Texas, to recover damages for personal injuries sustained by plaintiff by a fall from one of the electric light poles in charge of defendant while the plaintiff was engaged thereon as an employe of defendant in the discharge of his duties. The negligence averred against defendant consisted in permitting the metal rods which supported the electric lamp on top of the pole (from which plaintiff is alleged to have fallen) to become weak and insufficient, so that when plaintiff took hold of them in the discharge of his duties they broke and caused him to fall.

The defendant pleaded general denial, assumed risk, and contributory negligence. The cause was tried before the judge without a jury and resulted in a judgment for plaintiff for $5000. The receiver has by writ of error brought the cause here for revision.

The plaintiff, who was in the employ of the electric light company as "trimmer" when the concern was placed in the hands of a receiver, continued his duties as an employe of the receiver and was so engaged when the injuries complained of were sustained. The Citizens Electric Light and Power Company was engaged in furnishing light to the city of Houston and its inhabitants by means of electric lamps, some of which were placed on the tops of tall poles as hereinafter described, and the receiver had continued the business.

The duties of plaintiff as trimmer were to make daily visits to the electric lamps in the district assigned to him; to insert new carbons, and to see that the lamps were properly adjusted for the night. In order to reach such lamps as were supported on the tops of poles it was necessary that he should climb to the top of the pole by means of iron pins driven in the sides of the pole, about eighteen inches apart. These pins constituted steps upon which the climber placed his feet in ascend-

ing, the last step being placed a short distance from the top of the pole, and the whole forming a sort of ladder designed for the use of trimmers and others whose duties might require them to ascend. Across the extreme top of this pole was fitted an iron casting the two arms of which extended at right angles from the pole, and in which were fastened the iron rods or tubes which supported the lamp and its hood. The rods or tubes were two in number, one running up from each arm of the casting. Their height above the casting was about thirty-eight inches; on their top was placed the hood of the lamp and between them was hung the lamp itself. The combined weight of the hood and lamp was about forty-five pounds. The rods or tubes were three-fourth-inch iron gas pipe, and from their appearance alone it did not appear whether they were solid iron rods or hollow tubes. Plaintiff thought they were solid rods, and could not have ascertained that they were otherwise by the exercise of ordinary care in the discharge of his duties as trimmer. While the evidence is conflicting as to whether these tubes were designed to be used by the trimmer in reaching and sustaining the position necessary for the proper trimming and adjustment of the lamp, the evidence is sufficient to support the conclusion reached by the trial court that this was one of their ordinary and proper uses.

At the time of the accident plaintiff had been discharging his duties as trimmer for more than a year, and had daily climbed the pole from which he ultimately fell and was injured. He testified that he had each time used the rods in practically the same way. On the occasion in question he climbed to the top of the pole, placed one foot on the last metal step, and taking hold of the rods or tubes raised himself to an upright position, so that his body was opposite the lamp, reached one arm around the supporting rods while he held the other with his opposite hand, and while doing so both rods snapped off near their connection with the casting and he fell to the ground and was injured as alleged. The poles appear to be about thirty feet in height. The tubes in question had been in use for several years and the evidence shows that they are rapidly weakened by rust in the damp climate of Houston. An examination of these rods immediately after the fall disclosed the fact that they were badly eaten with rust, they being eaten entirely through in some places and the entire rod being reduced to the thickness of tin after the rust was knocked off. The rust adhered to the rods while they were in position and their condition was not disclosed to casual observation. Had the rods been solid as they appeared to be they would not have broken, and had they been sound tubes the accident would not have occurred.

The receiver had never had these rods inspected, and was guilty of negligence in failing to ascertain their condition and renew them before they reached the dangerous condition in which they were found. The plaintiff was not an inspector and was not guilty of negligence in failing to ascertain the condition of the rods nor in the method he used in reaching the position necessary to enable him to perform his task.

All the assignments of error save one assail the sufficiency of the evidence to support the judgment. Defendant contends that the evidence shows that the metal rods were designed alone to support the weight of the lamp and hood; were sufficiently strong for that purpose at the date of the accident; were never intended to be used as a means of climbing to the necessary position or of sustaining any part of the weight of the climber, and that plaintiff was guilty of contributory negligence and assumed the attendant risk in so using them.

It should be borne in mind that the lamp was at a considerable and dangerous height from the ground; that the trimming of the lamp required the use of both hands. The position necessarily assumed in performing this task placed practically the entire body higher than the top of the pole and the metal casting or crossarm, thus leaving nothing by which the operator could steady or support himself save the rods supporting the lamp and hood. The consensus of the testimony shows that even the most careful and prudent and experienced trimmers, and those who knew the rods were not solid iron, placed some weight on these upright supports while adjusting the carbons, and this is true in the very nature of things. The defendant must have known from the character of the structure that the rods would be used by trimmers in reaching and maintaining their perilous position. The weight of the pendant lamp and hood was about forty-five pounds, and the plaintiff ought not to be held to the unreasonable presumption that the rods had barely sufficient strength to support the lamp and hood and no excess of strength to answer the uses which their appearance invited. He was never told not to use them; never advised that they were not solid, and their size (which was greater than the metal foot rests) and their apparent solidity, instead of warning him not to use them, invited him to rely on them in gaining and maintaining a position where some support other than his feet and knees was so obviously necessary.

But defendant contends that even if it be conceded it was proper to use them to steady the body, plaintiff was negligent in using them to pull up or raise his weight by, and that in so doing and in standing on the top step instead of the step next to the top he voluntarily and recklessly did an unnecessary and improper thing which alone caused his injury. According to plaintiff's testimony they did not break while he was raising himself to the proper position, but when he put his arm around to reach the lamp. Plaintiff did not place his entire weight on the rods, but expressly stated that nearly all his weight was on his foot which he had placed on the step. He and the witness Riley stated this to be the usual and proper way. Other witnesses, while claiming that the safer way is to stand on the next to the last step and put the leg through and over the crotch of the casting, admit that it is an awkward thing to do, and nearly all the witnesses concede that the trimmer is left to his own judgment as to the safest and best way, and that they do not all use the same method. They all concede that the use of both hands is necessary in adjusting the carbon, and that even when stand-

ing on the last step but one, with one leg through the crotch or thrown around the post over the top step, as shown in one of the photographs, the body is utterly without lateral support unless the rods are used for the purpose. As to the safest and best way to do the work there is a substantial conflict in the evidence, but even if this were not true, the plaintiff is not held to the adoption of the safest method. He is held only to the exercise of ordinary care for his safety in the light of the facts which he knew or must be held to have known. It seems to us that no reasonable man would expect that what appeared to be solid iron rods three-fourths of an inch in diameter would snap off like brittle wood without a warning bend or time to catch a more substantial support. His daily position on the pole was one of peril at best, and he had the right to presume in the absence of knowledge to the contrary that his master had made and maintained the supports on which he might rely for safety in a reasonably safe condition. It will not do to say he evidently put more weight on the rods than he usually did. In doing his work, which it was his duty to do with reasonable dispatch, the law did not require that he should at his peril measure to a fraction the amount of weight he might with safety impose upon the rods. It was the master's duty to construct against the use to which he might reasonably expect they would be subjected. On the whole case we think it fairly appears, as found by the trial court, that the acts of plaintiff in using the rods as he did was reasonable and natural, and such as the master in the light of all the circumstances ought to have foreseen and provided against.

Whether under any circumstances it was proper for the trimmer to use the top step as plaintiff did has been determined by the trial court on competent evidence adversely to the contention of defendant, and we do not feel authorized to disturb the finding.

It is further contended by defendant that plaintiff was an inspector, so made by the receiver, and that this is shown by the undisputed evidence. It is true plaintiff's duties required him to ascend the pole daily, and he was required to report by entries in what was termed the "trouble book" any defect or disorder he saw on the lines, but it also appears that he was not instructed to look for defects not observable without the application of some test, and he was furnished no tools or appliances with which to test the soundness of the poles or the extent to which rust had damaged the iron rods. He reported from time to time such defects as he saw, but the evidence is sufficient to support the conclusion that he was in no sense made an inspector of the appliances the defects in which caused the accident. Nor can he be held under the facts to have known that the receiver had not adopted some system of inspection whereby he could have been advised from time to time of the condition of the various fixtures on which the safety of the employes depended.

We do not deem it necessary to discuss and distinguish from this case the authorities cited on this point by appellant. We think under a fair

construction they are inapplicable to this case.  The principles of law which control the case are familiar and well settled and it would serve no useful purpose to discuss them or to cite authority in their support.

By the seventh assignment of error defendant complains of the action of the court in permitting the witness Ballinger to testify as to his manner of climbing the poles in 1894 and 1895, while in the employ of the company of which the defendant is receiver.  The objection was not overruled when made, but as the trial was before the court it was admitted subject to objection.  If error, it was not harmful, and the assignment might be overruled upon this ground.  But in hearing this evidence the court did no more than hear the witness Ballinger testify to matters about which others had been permitted to testify without objection and to which defendant had addressed much testimony; that is, the manner in which various linemen had ascended the poles.  It was shown that plaintiff himself had acquired most of his experience as an employe of the light company before becoming an employe of the receiver, and it does not appear that the construction of the poles and lamps had been changed by the receiver or that the method of ascending the poles had been altered either by order of the reciver of by custom. The main force of the objection goes rather to the weight than to the admissibility of the evidence.  The case is plainly one of fact, and we are clear that it is not such as would authorize us to interfere on the ground that the evidence is insufficient or that the judgment is manifestly against the truth of the case.

Much of defendant's brief is addressed to matters affecting the weight of the evidence and the credibility of various witnesses, plaintiff among the number.  We have not deemed it necessary to follow the brief and discuss at length the force of the testimony.  We have thought it sufficient to state our conclusions with such elaboration and explanation as is necessary to a clear understanding  of the nature of the case.  The judgment is affirmed.

*Affirmed.*