## EVANSVILLE GAS & ELECTRIC LIGHT COMPANY v. RALEY.

[No. 5,379.   Filed December 13, 1905.   Rehearing denied June 20, 1906.]

1. MASTER AND SERVANT.—*Assumed Risks.—Liability for.*—The master is not liable for injuries caused by defects, the risks of which are assumed.   p. 344.

2. SAME.—*Assumed Risks.—Defects Open to Observation.*—The master, in the absence of a promise to repair, is not liable for patent defects.   p. 346.

3. SAME.—*Electricity.—Light Poles.—Latent Defects.—Superior Position to Inspect.*—The servant employed to remove wires from an electric light pole is, as a matter of law, in a superior position to that of the master to detect latent defects in such wire and pole, and therefore assumes such risks.   Roby, J., dis-senting.   p. 347.

4. SAME.—*Electricity.—Light Poles.—Duty to Inspect.*—Where a servant is employed to take down and put up electric light wires, such work being necessarily dangerous, the master is under no duty to inspect the electric light poles and wires to discover latent defects.   Roby, J., dissenting.   p. 347.

5. TRIAL.—*Burden of Proof.—Master and Servant.—Assumed Risk.*—The burden is upon the servant to prove that the defect causing his injuries was not an assumed risk.   p. 349.

6. MASTER AND SERVANT.—*Electricity.—Light Poles.—Safe Place.*—A servant employed to remove wires from an electric light pole has no right to rely upon an implied representation that such pole is free from latent defects.   Roby, J., dissenting.   p. 349.

7. SAME.—*Electric Light Poles.—Accidents.—Maxims.*—Where an electric light lineman, according to orders, climbed a pole to remove a wire, and in doing so stuck his spur into the pole, and, by reason of a latent defect not observable by him, his spur hold broke out causing him to fall, his hand catching a wire from which the insulation had decayed, thus forming a short circuit and burning three fingers off of one hand and two off of the other, such injury is the result of an accident, and is *damnum absque injuria.*   Roby, J., dissenting.   p. 349.

From Gibson Circuit Court; *O. M. Welborn,* Judge.

Action by Jefferson C. Raley against the Evansville Gas & Electric Light Company.   From a judgment on a verdict for plaintiff for $3,000, defendant appeals.   *Reversed.*

*Miller, Elam & Fesler* and *Elmer E. Stevenson,* for appellant.

*H. M. Logsdon, D: Q. Chappell* and *A. J. Veneman,* for appellee.

COMSTOCK, J.—Action by the appellee against the appellant for negligently causing his injury while in the employ of the appellant.

The complaint was in one paragraph, to which a demurrer for want of facts was overruled, and an answer in denial filed. A trial by jury resulted in a verdict for appellee for $3,000.

Upon this appeal the overruling of appellant's motion for a new trial is the only error discussed.

The complaint alleges, in substance, that on August 22, 1902, and prior thereto, the defendant corporation maintained an electric light and power plant in the city of Evansville, and controlled certain lines of wires suspended upon poles in the streets. These wires were used for furnishing light and power in said city, and for that purpose powerful currents of electricity, dangerous to human life, were passed through them. It is averred that the defendant knew, when these wires were strung on the poles, that it would be necessary for its linemen to work "in and about the care and repair of said wires and poles," and that it was the duty of the defendant to keep the wires safely and completely insulated, so that linemen, lawfully about them, should not be injured by contact therewith, but that the defendant disregarded its duty, and negligently maintained said wires, and negligently failed to protect and cover said wires with safe and sufficient insulating material, and negligently permitted the covering used thereon to become defective and insufficient to render them safe to persons coming in contact therewith, all of which was unknown to the plaintiff prior to his injury. It is further alleged that the plaintiff was working as an employe of the defendant, and as a lineman, on the date mentioned, under the direc-

tion of a superior officer of the defendant, and was directed by said officer to ascend a certain pole, at the intersection of two streets in said city, for the purpose of untying the wires from a glass insulator, preparatory to transferring them to a new pole, to be erected in the place of the old one; that the defendant had negligently permitted the old pole to become defective, doty and rotten to such an extent that it was dangerous for the linemen to climb or stand on, all of which was unknown to the plaintiff; that the defendant, long prior to the date mentioned, knew, or, by the exercise of proper diligence, should have known, that the electric light wires were insufficiently insulated, and that the pole was defective, doty, rotten and dangerous; that the plaintiff ascended the pole in obedience to the order given, and while supporting himself thereon in the usual way, by sinking his climbing-spurs into the body of the pole, and while engaged in the act of carrying out his instructions, by pushing the wires from the grooves of the insulators, one of his spurs, "by reason of the defective, doty, rotten and dangerous condition of said pole, broke and slipped from its hold, causing plaintiff involuntarily to reach out in an effort to support himself from falling, and to touch and come in contact with said wires, highly charged with electricity, as aforesaid," and by reason and on account of the defective and imperfect insulation thereof, as aforesaid, he received a current of electricity into his body, whereby he was greatly shocked, wounded and injured, and for a long space of time was prevented from performing ordinary business, etc.

One of the reasons for a new trial is that the verdict of the jury is not sustained by sufficient evidence; another, that the verdict of the jury is contrary to law.

If the injury to appellee was due to risk assumed by him as incident to the employment, he was not entitled to recover. Of course upon this proposition there is no 1. controversy. The facts are substantially as follows: Appellee was injured on August 22, 1902, at

about 9 o'clock in the morning. He had had three years experience as a lineman. On the day he was injured he had on his spurs or climbers, but he climbed the pole by means of steps and it was not necessary to use the spurs. The pole was about forty-five feet high and fifteen inches in diameter at the bottom. It was twelve years old, which was about the usual life of such poles. It looked to be ten years old. It appeared sound at the lower end. Toward the top it was, in fact, sap-rotten, although it was painted and its condition apparent only to one on the pole thrusting spikes or spurs into it. Some twelve feet below where appellee was hurt there was also a large surface sap-rotten, and at the place where he was injured only a small place seemed to have broken through, when observed after his accident. Appellee had never seen the pole or wires mentioned until the morning of the accident, when he went up to carry out the instructions of his foreman, and did not know how long they had been in use. . The pole was being removed for the purpose of placing a taller one in its place. Appellee made no examination of the pole, and did not test it in any way. It carried from four to six cross-arms, upon which were strung about twelve copper wires. These wires had also been in place on the poles about twelve years, and were protected by a rubber covering. They were strung far enough apart so that a lineman had plenty of room to go up the pole without touching them, and turn his body about in doing the work without coming in contact with the wires. They carried about 2,000 volts of electricity. The rubber covering had been affected by exposure to weather, and it was discovered after appellee's accident that there was a space upon one of the wires near where he worked that was exposed. He ascended the pole for the purpose of untying the wires which were tied to glass insulators with short pieces of small wire, and then pushing them off the cross-arms, so that the pole could be removed and another substituted.

He had no special instructions as to the manner of doing the work, but was told by the foreman to go up and remove the wires. At the top of the pole he did some work and then came down several feet, until he was below the last cross-arm. He placed his spurs in the pole, put his safety-belt around his body, and fastened it to the belt round the pole, to prevent falling, and began working at that place. With his right hand he was untying a wire, and the one upon which he was at work was the one which was afterward discovered to be not fully covered with the rubber. While thus engaged he thought that his spur on the left side broke out of the pole, causing him to go down a little until the belt held him. In so doing he apparently threw out his left hand and placed it upon another wire, about eighteen inches away, and thus created what electricians call a short circuit. By so doing he received a violent shock; was found unconscious, held by the belt and both hands burned. The wires were being removed from the pole in the usual way, and appellee admits that the foreman told him before he began the work that he should work the wires as if they were hot, or heavily charged with electric current. This was also the usual way of handling such wires, for the reason that all understood that they were likely to be heavily charged and that short circuits should be avoided, for, if one was created, no insulation could be depended upon against injury, and this was understood by appellee. Appellee paid no attention to the rubber upon the wires or their general condition, although he was in a position readily to see them.

Neither the employer nor the employe knew the condition of the pole or the wires. No complaint was made upon the part of the one; no promise by the other. Under such circumstances an employe is required to use his senses to ascertain the condition of the appliances he is to use, and the place in which he is to work, and he assumes the risks which he could have discovered by the

discharge of this duty. *Pennsylvania Co.* v. *Ebaugh*
(1899), 152 Ind. 531; *Wabash R. Co.* v. *Ray* (1899), 152
Ind. 392; *Bedford Belt R. Co.* v. *Brown* (1895), 142 Ind.
Ind. 659; *Western Union Tel. Co.* v. *McMullen* (1895),
58 N. J. L. 155, 33 Atl. 384, 32 L. R. A. 351.

The appellee was in the best position to ascertain the
condition of the wires and of the pole, but no superficial
inspection would have disclosed the condition of
3. the pole. The rule referred to is especially appli-
cable when the situation changes as the work pro-
gresses, and the employe has the better opportunity to ob-
serve the existing conditions. *Island Coal Co.* v. *Green-
wood* (1898), 151 Ind. 476; *Perigo* v. *Indianapolis Brew-
ing Co.* (1899), 21 Ind. App. 338; *Vincennes Water Sup-
ply Co.* v. *White* (1890), 124 Ind. 376; *Southern Ind. R.
Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460.

It was the duty of the appellee to do the work in which
he was engaged. He necessarily knew that the work of
climbing poles and taking down and putting up
4. wires was dangerous work, that the life of the pole
was limited, and that any pole after a time would
become unsound. Was it the duty of the defendant to the
lineman, considering the character of his employment, to
inspect each pole and inform him whenever any of them
were so decayed as to be unsound? We think not. As was
said in *McIsaac* v. *Northampton Electric, etc., Co.* (1898),
172 Mass. 89, 90, 51 N. E. 524, 70 Am. St. 244: "When
he engaged to work for the defendant, he knew it would be
his duty to go upon poles that had been set in the ground
an uncertain length of time. He must have known that
the work of climbing poles and taking down and putting
up wires would often put a strain upon a pole much more
than it would be exposed to in sustaining wires when they
were all in their proper positions. He must have known that
it would be inexpedient and impracticable to have a man
or company of men to go and examine each pole upon which

a lineman was about to work, to see whether it would sustain the strain which the work would put upon it. The evidence was undisputed that it was easy to determine very quickly whether a pole was badly decayed a little below the surface of the ground, and that no skill or experience was required to do it beyond that which was possessed by ordinary linemen. The plaintiff testified that there were risks about the business with which he was familiar as a lineman. We think that one of the most common and obvious of these, in reference to which both he and his employer must have been presumed to have contracted when he entered the defendant's service, was the risk that some pole of uncertain age might break and fall when a lineman was working upon it, if he did not take measures to ascertain its condition before going upon it." In the case from which we have quoted, it was held that an electric lighting corporation owes no duty to a lineman in its employ to inspect, below the surface of the ground, poles upon which its wires are suspended, to see if they are decayed, but a lineman, when he enters its service, assumes the risk of the breaking and falling of an old pole when he is working upon it, if he does not take measures to ascertain its condition before going upon it, and he cannot maintain an action against the corporation for personal injuries sustained from that cause, and that evidence that the corporation has made no inspection of the pole prior to the accident is immaterial.

The exercise of ordinary care upon the part of the appellant would have disclosed no more than the exercise of the same degree of care by appellee. Appellee's opportunities for observation were the better of the two. As between the two, appellant was under no obligation to inspect the poles. *McIsaac* v. *Northampton Electric, etc., Co., supra; Kellogg* v. *Denver City Tramway Co.* (1903), 18 Colo. App. 475, 72 Pac. 609.

The burden is upon an employe to show that an injury received is not the result of a risk of the business assumed, and in this case there is no evidence that the risk 5. arising from a defective pole or dangerous wires was not assumed. It does not appear that appellee went up the pole relying upon any examination or test of its condition. The dismantling of a pole—old or new, sound or decayed—of wires, is obviously attended 6. with risks. It is certainly not a case in which appellee can rely upon an implied representation that the place was safe for his work. Appellee was not misled as to the conditions surrounding him. *Kellogg* v. *Denver City Tramway Co., supra; Tanner* v. *New York, etc. R. Co.* (1902), 180 Mass. 572, 62 N. E. 993; *Roberts* v. *Missouri, etc., Tel. Co.* (1901), 166 Mo. 370, 66 S. W. 155.

No assurance of safety was given, nor anything said or done to make appellee less careful than he might otherwise have been. He knew that his safety was to be secured by avoiding a short circuit; that is, contact with two wires at the same time, each heavily charged with a certain kind of electricity. Appellant had reason to believe that this would be done. The complaint is not upon the theory that appellee did not understand the danger of his work, or that he was not instructed. The legal presumption is that in assuming the duties of his employment he assumed the risks so far as reasonable diligence on his part could discover them, and the evidence shows that he was in the best position to judge of the conditions that surrounded him. He probably did not make the observations within his power, because he did not anticipate the unusual circumstances which resulted in his injury.

Appellee cites many cases in which the injured party recovered damages against defendants, but to whom they did not sustain the relation of employe, and the question 7. of assumption of risk did not therefore arise. Manifestly the appellee's misadventure belongs to

that large class of events occasioned by unlooked for conditions, called accidents. As great as appellee's misfortune is shown to be, we are of the opinion that under the law and the evidence he is not entitled to recover.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

## On Petition for Rehearing.

Per Curiam.—The petition for a rehearing herein is denied.

## Dissenting Opinion.

Roby, J.—The negligence alleged in the complaint must be taken as established by the verdict, and the sufficiency of the facts to support it in that behalf is not questioned.

It appears from the opinion that the defects complained of, both of which contributed to the injury and both of which were caused by the negligence of a single defendant, were latent and concealed ones. It is entirely well established that the employe is not required to search for latent and concealed dangers of which he has neither actual nor constructive notice. *Salem Stone, etc., Co. v. Tepps* (1894), 10 Ind. App. 516, 519.

It is also established that an employe assumes risks naturally and ordinarily incident to the service in which he engages. *Wortman v. Minich* (1901), 28 Ind. App. 31; *Lake Shore, etc., R. Co. v. McCormick* (1881), 74 Ind. 440, 445. Danger caused by the master's negligence is not a necessary incident to the service, and the risk arising therefrom is not an assumed, incidental one. *Barley v. Southern Ind. R. Co.* (1903), 30 Ind. App. 406.

"The risks of the service which a servant assumes in entering the employment of a master, are those only which occur, after the due performance by the employer, of those duties which the law enjoins upon him." *Benzing v. Steinway* (1886), 101 N. Y. 547, 5 N. E. 449. See, also, *Stringham v. Stewart* (1885), 100 N. Y. 516, 3 N. E. 575;

*Pantzar* v. *Tilly Foster Iron Min. Co.* (1885), 99 N. Y. 368, 2 N. E. 24.

The employe also assumes risks arising from open and obvious defects. The danger arising therefrom must be either actually or constructively known to him, and he must also be charged with actual or constructive appreciation of the danger out of which the assumed risk arises. *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541. Nothing short of this can form the basis of an implied contract upon which the doctrine of assumed risk depends in this State. *Wortman* v. *Minich, supra.* It is said in the opinion that "appellee was in the best position to ascertain the condition of the wires and the pole, but no superficial inspection would have disclosed the defective condition of the pole." This statement is inaccurate as to facts. The appellee had never seen the pole until a moment before he climbed it. He did not know how long it had been in place, or how long the insulation had been upon the wires. He climbed the pole by means of a ladder. It does not appear that he ever sank a spur into it until he did so to do the work in the performance of which he was injured. Neither does it appear that there was anything in the resistance made by the pole to the settling of the spur which attracted his attention to its condition. The general verdict offers all inferences for appellee, and this court cannot say that the fixing of the spur in the pole at that time gave or should have given appellee notice of the rotten condition thereof. The appellee was not in the best position to ascertain the condition of the pole and wires. The rules regulating the respective duties of employer and employe have been so many times declared that it seems superfluous to repeat them.

"The appellee was not required on that occasion to make a special examination or critical investigation to ascertain whether the bent had been carefully or negligently raised, or whether it was then in an unsafe or dangerous position, before obeying the command of the master. When directed

to do the act in the performance of which he was injured, he had the right to assume that the street commissioner, with his superior knowledge of the facts, would not expose him to unnecessary peril." *City of Lebanon* v. *McCoy* (1895), 12 Ind. App. 500. See, also, *Ohio, etc., R. Co.* v. *Pearcy* (1891), 128 Ind. 197.

If an employe, reposing confidence, as he has a right to, in the prudence and caution of the employer, relies upon the adequacy of the implements put into his hands to work with, and upon the safety of the place assigned him to work, and sustains injury in consequence of the failure and neglect of the employer to disclose latent defects or perils, which the latter knew, or which he should have known by the exercise of reasonable diligence the employe is entitled to remuneration for his loss. *Bradbury* v. *Goodwin* (1886), 108 Ind. 286; *Krueger* v. *Louisville, etc., R. Co.* (1887), 111 Ind. 51, and cases cited; *Mitchell* v. *Robinson* (1881), 80 Ind. 281, 41 Am. Rep. 812; *Boyce* v. *Fitzpatrick* (1881), 80 Ind. 526; *Atlas Engine Works* v. *Randall* (1885), 100 Ind. 293, 50 Am. Rep. 798; *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181; *Louisville, etc., R. Co.* v. *Frawley* (1887), 110 Ind. 18; *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151; *Pennsylvania Co.* v. *Whitcomb* (1887), 111 Ind. 212; *Stringham* v. *Stewart, supra; Pantzar* v. *Tilly Foster Iron Min. Co., supra; Bean* v. *Oceanic Steam Nav. Co.* (1885), 24 Fed. 124; *Postal Tel. Cable Co.* v. *Likes* (1907), 225 Ill. 249, 80 N. E. 136.

"It is equally true that the master is bound to use ordinary care and diligence in providing reasonably safe and suitable machinery and appliances for his servants, and is liable for injuries resulting from his failure to perform this duty. He is also chargeable with notice of the natural tendency of machinery and implements to wear out and decay with use and age, and is therefore required to exercise an active and continuing supervision and vigilance to maintain them in a reasonably safe condition. * * * A servant may rightfully act upon the presumption that the

master has performed his duty in supplying proper machinery and appliances unless he has notice otherwise, or facts are patent and come within the reasonable range of his observation, which would excite the apprehension of a reasonably cautious person, and put him upon inquiry. * * * While a servant may have an opportunity, he is not bound to make a critical examination of the condition of an implement or item of machinery before using it, to ascertain if it contained any latent defects, unless so required by the terms of his employment." *Louisville, etc., R. Co.* v. *Berry* (1891), 2 Ind. App. 427, 430. See, also, *Indiana Car Co.* v. *Parker, supra; Bradbury* v. *Goodwin, supra.*

In the statement of the opinion that "the exercise of ordinary care upon the part of appellant would have disclosed no more than the exercise of the same degree of care by the appellee," the court usurps the functions of the jury, forgetting that an appellate tribunal is not at liberty to weigh evidence and does not approach the issue as the trial court does, but is bound to take the facts as they have been determined. The opinion also ignores the superior knowledge of appellant and appellee's actual ignorance of the conditions by reason of which he was injured. The character of the defects complained of furnishes the foundation for the conclusion reached by the jury and prevents this court from justly saying, as a matter of law, that it was appellee's duty to have known of the danger to which he was subjected. The master's duty is to furnish a safe place and safe appliances. It requires appellant to take notice of the tendency of wood to decay, and of the effect of exposure upon the perishable material with which it chose to insulate the wires in question. It knew the time during which such processes had been going on, and was bound to take notice of them, and duly and reasonably to guard against them. Appellee was under no duty, as before stated, to search for latent and concealed defects, and

had no information tending to put him upon inquiry. He protected himself, by means of a safety-belt, from falling to the ground. A slip, caused by the defective pole, was productive of a painful injury, he thereby being brought in contact with a wire negligently allowed to remain without sufficient insulation. Both causes which contributed to his injury were created by the negligence of a single defendant, and the finding of the fact against such defendant ought, so far as the question of proximate cause is concerned, to be reasonably safe from the logic of this court.

Appellee did not inspect or examine either the pole or insulation upon the wires. He did not know that there was any defect in either, nor how long the pole had been in use, nor how long the insulating material had been upon the wires. The statement in the opinion "that appellee admits that the foreman told him before he began the work that he should work the wires as if they were hot," is not an ingenuous way of stating that appellee's attorney asked him upon his original examination, the following question: "Now what did he say to you or what was said to you there, if anything, about working the wires? A. Why, Mr. Fisher said to work those wires as if they were hot."

It is not suggested by appellant that appellee did not comply with the order thus given. No detail of his procedure is criticised. He unfastened the outside wire and took hold of it with his right hand to push it off of the cross-arm. The wires made an angle at this pole, and considerable force was required to remove it. While exerting such force, the spur on his left foot tore out of the pole, causing him to lose his balance and to bring his left hand in contact with a second wire, thereby forming a short circuit and instantly depriving him of consciousness. Three fingers were burned off of one hand and two off of the other, and he was otherwise injured.

Appellant's negligence formed an element in the injury complained of, and takes the occurrence out of the category

of mere accidents. An accident, in the sense in which the term is used, is an occurrence to which human effort does not contribute. "A pure accident, where there is an absence of negligence, will not supply a cause of action, but where the accident is attributable to the negligence of the defendant, it is otherwise." *Nave* v. *Flack* (1883), 90 Ind. 205, 210, 46 Am. Rep. 205.

I am convinced that a decision which relieves owners of electric light and other poles of a similar nature from all responsibility in cases of this sort ought not to be made, and that the petition for a rehearing herein should be sustained.