ALBERT A. ARNOLD *vs.* THE CONNECTICUT COMPANY.

Third Judicial District, New Haven, January Term, 1910.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

Where no question is raised with respect to the charge, it will be assumed by this court that the jury were properly instructed upon the issues before them.

Whether the plaintiff was guilty of contributory negligence, depends upon whether he acted as an ordinarily prudent man would have acted under the circumstances; and this is a question of fact for the determination of the jury.

The evidence in the present case reviewed and *held* to have been sufficient to justify a verdict for the plaintiff, a lineman in the employ of the defendant, who was injured while truing up a trolley-wire.

A servant does not assume the risk of personal injury from defective conditions of which he has no knowledge or notice, actual or constructive.

Argued January 29th—decided February 3d, 1910.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in Fairfield County and tried to the jury before *Gager, J.;* verdict and judgment for the plaintiff for $650, and appeal by the defendant. *No error.*

*Joseph F. Berry,* for the appellant (defendant).

*William A. Griffin, Jr.,* for the appellee (plaintiff).

THAYER, J.   The plaintiff's evidence tended to prove that the defendant operated an electric street-railway by the overhead trolley system.   There was a curve in the railway where, at the junction of two streets, it turned from one into the other.   The trolley-wire at the curve was suspended and held above the middle of

the track by several wires called "pull-offs" attached to it, or to a bridle, at different points around the curve, and fastened to poles and trees at the side of the street upon the long side of the curve. Two hundred and twenty feet north of the center of this curve there was a "sleeve," so-called, in the trolley-wire. Such sleeves are used to connect the trolley-wire when it becomes broken, the ends of the wire being passed into the ends of the sleeve, which is a metal tube, and brought out of a hole in the top of and midway between the ends of the sleeve and bent back. The sleeve is then filled with solder, if the work is properly done, so that the wire cannot be pulled from the sleeve. Half way between the sleeve and the center of the curve there was a span-wire extending across the street and attached to poles at each end. The trolley-wire was attached to this and supported by it.

At the time of his injury the plaintiff was a lineman and repairman in the employ of the defendant. He acted only under orders. His duties were, when directed, to repair, change, pull down, and string up wires, and if anything was wrong with them to set it right. He was sent that morning with three other linemen to true up the trolley-wire at this curve, it having sagged toward the inside of the curve. Having loosened the cap and comb by which the trolley-wire was attached to the span-wire, so as to get more slack in the trolley-wire, they proceeded to pull back the trolley-wire, so that it should be over the middle of the track, and to fasten it there by tightening up the pull-off wires. After having adjusted about half of these, and while at work upon another at about the center of the curve, the trolley-wire, because not soldered in as it should have been, pulled out of the sleeve, and by its recoil the plaintiff was thrown from the top of the repair-car, where he was working, and received injuries.

The trolley-wire had been connected by this sleeve
by a former owner of the railway, from whom the de-
fendant acquired it.   The sleeve was left unsoldered
with the knowledge of the superintendent of the former
owner.   The defendant had no inspector of its over-
head system, and no general inspection of the lines
was made by it.   This was known to the plaintiff.   He
was thirty years of age, had been a lineman and repair-
man upon electric systems for ten years, and for nine
months prior to the accident had been in the employ of
the defendant in that capacity upon its trolley and
electric light systems at South Norwalk, where the in-
juries occurred.   He did not know of the existence of
the sleeve mentioned.   He knew that such sleeves were
in use upon the system, but did not know whether they
were properly soldered or not.

By an inspection made from the top of a car at the
sleeve, there is no difficulty in seeing whether the sleeve
is properly soldered.   It is difficult from any other in-
spection, than one so made that the top of the sleeve
can be seen, to ascertain whether it has been properly
soldered.

The complaint charges the defendant with negligence
in failing to cause an inspection to be made of its trolley-
wire and the sleeve in question, and in permitting them,
with knowledge of their defective and dangerous condi-
tion, to remain in that condition.

The defendant offered no evidence.   It appeals from
the court's refusal to set aside the verdict, upon the
ground that the plaintiff's evidence shows that he was
guilty of contributory negligence, and that he assumed
the risk of injury from the defective sleeve.

We are to assume that the jury were properly in-
structed, as no questions are raised as to the charge.

Whether the plaintiff was chargeable with contribu-
tory negligence depends upon whether he acted as an

ordinarily prudent man would have done under the circumstances. This was a question of fact for the jury. From the evidence before us we cannot say that they were not warranted in finding that issue for the plaintiff.

The servant assumes the ordinary hazards incident to his employment, and also those hazards of which he has knowledge, either actual or constructive, arising after his employment, if, with a comprehension of the risk and without any promise that the unsafe conditions shall be remedied, or other inducement from the master, he voluntarily continues his employment. *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548, 558; *Dickenson* v. *Vernon*, 77 id. 537, 542, 60 Atl. 270; *Girard* v. *Grosvenordale Co.*, 82 Conn. 271, 275, 73 Atl. 747. Within this rule are included those cases where a servant, employed to repair a machine or other appliance which has become defective and unsafe, receives an injury caused by defects in such appliance. By accepting the service he assumes the risks incident thereto. He has notice that it is defective, and cannot complain that it is so, although the master is to blame for its condition.

It is claimed that the present case falls within this rule; that, having undertaken to true up the trolley-wire at the curve, the plaintiff had notice that the trolley-wire was defective, and assumed the risk of any injury which might come to him from defects in the wire.

There was no evidence, and it is not claimed, that the sagging of the wire was in any way due to the defective conditions at the sleeve. There was evidence tending to show that it was caused by the sagging or leaning in toward the track of the pole to which the pull-off wires were attached. If this were so, notice of the fact that the wire was sagging would be no notice to the plaintiff of any defect or weakness of the trolley-wire at the sleeve or anywhere else. He was not informed that the

wire was defective.  On the contrary, he would from his instructions understand that he had to deal with a sound wire.  He was to adjust or true up a sound wire, not to repair a defective one.  Had he found, on arriving at the curve, that the sagging was due to the defective condition of the wire at the sleeve, the case might have been different.  He might then, by applying force to the wire until it gave way, make himself chargeable with contributory negligence.  But as matters stood he had no knowledge, actual or constructive, of the defective condition.  There can be no assumption of a hazard without knowledge, either actual or implied, of its existence.  We cannot, from the evidence and record before us, say that the verdict was not warranted by the evidence.

There is no error.

In this opinion the other judges concurred.