Walling *v.* Terre Haute, etc., Traction Co.—60 Ind. App. 607.

---

WALLING *v.* TERRE HAUTE, INDIANAPOLIS AND EASTERN TRACTION COMPANY.

[No. 8,825. Filed January 28, 1916.]

1. MASTER AND SERVANT.—*Masterial Duty.—Safe Place to Work.*— The master must use ordinary care in providing his employes with a reasonably safe place in which to work. p. 610.

2. MASTER AND SERVANT.—*Injuries to Servant.—Assumption of Risk.—Knowledge of Servant.*—Under a complaint disclosing that plaintiff, who was employed as a lineman to repair defective and damaged wires along defendant's electric railroad, had been in defendant's employ some time before the accident in that line of work, and that he understood the particular work, and had full knowledge of the situation and condition of the car from the top of which he did his work, the plaintiff must be deemed to have assumed the risk from the uneven roof of the car. p. 610.

3. MASTER AND SERVANT.—*Assumption of Risk.—Inspection.—Lineman.*—While the rule of safe place applies in favor of one employed as a lineman, the general rule that the employe assumes the incidental and obvious risks of the service also applies, so that where the employer has no independent system of inspection, and the lineman is not so inexperienced as to be entitled to instruction, and has no reason to believe that an inspection has been made, the latter must make such tests himself as may be necessary to ascertain whether it is safe to proceed with his work, and can not hold the employer liable unless his injuries result from a defect existing in the poles, cross-arms, etc., when they were originally placed in position, or unless the employer had some knowledge of the defect which was not communicated to him. p. 611.

4. MASTER AND SERVANT.—*Assumption of Risk.—Inspection.—Lineman.*—Where the employer has provided an independent system of inspection, one employed as a lineman does not assume the risks that are not obvious to the ordinary use of the senses, and that could have been discovered by reasonable inspection, nor does he, in the absence of duty to inspect devolving on him, assume risks of which he has no actual or constructive knowledge. p. 612.

5. MASTER AND SERVANT.—*Assumption of Risk.—Inspection.—Contract.*—Where one employed as a lineman is required by his contract to make an inspection of the poles, etc., he can not recover for injuries resulting from his failure to properly inspect. p. 613.

6. MASTER AND SERVANT.—*Injuries to Servant.—Lineman.—Complaint.—Defects in Ways and Works.*—In an action for injuries to one employed as a lineman to repair defective and damaged wires, etc., along defendant's electric railway, a complaint alleging that, plaintiff's injuries resulted from the breaking of a hanger which caused him to fall from the car on which he was standing, and alleging that the hanger was bent and defective, that it broke by reason of long use, defective condition and failure to inspect, that defendant knew of the defective and worn hangers along its line, but that plaintiff was ignorant of such defects and was not warned, and that he had nothing to do with the construction, placement and maintenance of hangers, and had no cause or reason to apprehend the breaking of the particular hanger, etc., and disclosing nothing to show a duty on plaintiff's part to inspect, was sufficient on demurrer. p. 613.

From Superior Court of Marion County (83,437); *Clarence E. Weir*, Judge.

Action by Clifford O. Walling against the Terre Haute, Indianapolis and Eastern Traction Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*George W. Galvin*, for appellant.
*W. H. Latta*, for appellee.

IBACH, C. J.—Appellant was injured while in appellee's service as a lineman. The material averments of the amended complaint are the following: "In the performance of his duties in and along the line of his work under the terms of his employment, the said plaintiff was required to and did day after day go along and upon defendant's line and repair broken and defective wires and straighten bent and damaged wires at points along said line, suspended from hangers attached to poles, erected and placed by defendant. Defendant, at no time, as in the exercise of reasonable care it should have done, provided a work car for its employes, but required them to

NOVEMBER TERM, 1915.          609

Walling *v.* Terre Haute, etc., Traction Co.—60 Ind. App. 607.

work from the tops of its passenger and freight cars. The work required to be done was extra hazardous, by reason of the defendant's negligence and carelessness in failing to furnish the proper car to work from. On the day of his injury, May 1, 1909, plaintiff was sent out to repair a broken, bent, or displaced wire of said company, and was directed to do said work from the top of one of its freight cars, the defendant at the time well knowing that the work so performed from the top of its freight car was more hazardous and dangerous than it would have been had the work been performed from a work car, and defendant also knew that such work was extra hazardous by reason of worn and defective hangers, negligently and carelessly placed and maintained in use by defendant, the existence of which was not known to plaintiff, the said plaintiff not knowing of the hazards incident to the work in hand from the top of said car. Defendant knew of plaintiff's lack of knowledge as to the additional hazard of this work and so knowing, negligently and carelessly sent him out upon said work without warning as to the peculiar hazard of the work by reason of such worn and defective hangers. On said date he went upon the car and undertook to straighten a hanger necessary to receive the wire upon which he was working from the top of the car, that had become bent and defective and which had been negligently and carelessly kept in use and maintained by defendant, and while so working, the hanger broke by reason of its long use, defective condition and failure to inspect, and he was thrown to the ground and injured, because of the breaking of the hanger, while with his uncertain footing upon the car and its unguarded and unrailed condition, and the peculiar hazards of the special work required of him, the defendant well

knowing that the hanger upon which he was required to work was likely to break and throw plaintiff from the car, which fact was unknown to plaintiff and he had no cause or reason to apprehend the breaking of the hanger, and had no reason to know and was not informed by defendant who did know, of the extra hazard of the work then to be performed and by warning and information had not been protected against such hazard. That plaintiff had nothing to do with the placement, maintenance and construction of the hanger, and no knowledge of its defects." A demurrer addressed to this pleading was sustained.

The only question presented for our consideration is whether a cause of action is stated. If it is to be held suffiicent, it must be because the facts alleged show that appellee owed some special legal duty to appellant which it failed to perform and the injury resulted to him by reason of such failure. While the complaint contains many conclusions of the pleader, it is apparent that it proceeds upon the theory that the breached duties were the failure to provide appellant with a proper work car and in failing to inform him of the dangerous condition of the hangers, which formed a part of appellee's general system of wires, which dangers were unknown to him and were known to appellee. It is an elementary principle of law governing the relation of master and servant, that the master must use ordinary care in providing his employes with a reasonably safe place in which to work. But when all the facts well pleaded in this case are considered, we do not believe the case is one which warrants the application of the "safe place" rule in all its strictness. The complaint shows that appellant was employed as a lineman, his express duty was to repair defective

wires and straighten bent and damaged wires where-ever they might be found along appellee's line of road. It appears that appellant had been in appellee's employment for some time before the accident complained of, in the same line of work, performed in the same manner. It is fair to assume that he was a man of mature years, of fair intelligence and experience. So that if it were conceded that the complaint charges negligence in providing the car with an uneven and irregular roof in the first instance, it appears that all the work which appellant had done for appellee had been done from the top of a freight or passenger car, and the specific allegations of negligence are overcome by those which follow, clearly disclosing the fact that he undertook the particular work with full knowledge of the situation and condition of the car. Such condition then became an incident to his employment as a lineman and was a risk assumed by him.

There remains to be considered the averments of the complaint in respect to the defective hanger. It appears that the injury in this case was not caused by the presence of an electrical current in the wires, but by the unsoundness of a hanger, or support from which wires were suspended. So the cases which deal with the soundness of poles and cross-arms, and their breaking, are the most nearly allied to this case of any which we have been able to find. "The rule of safe place applies to a line of poles and wires such as plaintiff was required to work upon, and it was the duty of the defendant to see that such poles, cross-arms, and wires were reasonably safe and free from latent defects and dangers, which ordinary care on its part might avoid." *City of Greenville* v. *Branch* (1913), 152 S. W. (Tex. Civ. App.) 478, citing 2 Cooley, Torts (3d ed.) 1123. The most important question is as to the assump-

tion of the risk from the defective hanger, and whether the complaint states such facts as to show that appellant assumed the risk. It is a general rule applicable in master and servant cases that the employe assumes obvious risks, and those incidental to the service. *Ambre* v. *Postal Tel., etc., Co.* (1909), 43 Ind. App. 47, 86 N. E. 871; *Lyons* v. *City of New Albany* (1913), 54 Ind. App. 416, 103 N. E. 20; *Evansville Gas, etc., Co.* v. *Raley* (1906), 38 Ind. App. 342, 76 N. E. 548, 78 N. E. 254. The general rule applicable to cases such as this has been thus stated, "When the employer has no independent system of inspection of poles, cross-arms, steps, etc., and the lineman has no reason to believe that such inspection is made, he had no right to rely on the employer for such inspection, but must make such tests himself as may be necessary to ascertain whether it is safe to go upon them, and can not hold the employer responsible for injuries received by him by such poles, cross-arms, or steps giving away, unless there was some defect in them when they were originally placed in position, or the employer had some knowledge of the defect, which was not communicated to the lineman—provided, of course, the lineman is not such an inexperienced person as is entitled to be instructed as to the danger." *Consolidated Gas, etc., Co.* v. *Chambers* (1910), 112 Md. 324, 75 Atl. 241, 26 L. R. A. (N. S.) 509. See, also, *Flood* v. *Western Union Tel. Co.* (1892), 131 N. Y. 603, 30 N. E. 196; *Johnston* v. *Syracuse Lighting Co.* (1908), 193 N. Y. 592, 86 N. E. 539, 127 Am. St. 988; *Adams* v. *Central Ind. R. Co.* (1906), 38 Ind. App. 607, 78 N. E. 687; *Evansville Gas, etc., Co.* v. *Raley, supra.* If the employer has provided an independent system of inspection, the employe

4. does not assume risks which are not obvious to the ordinary use of the senses, and which

could have been discovered by reasonable inspection. *Rutledge* v. *Swinney* (1913), 170 Mo. App. 251, 156 S. W. 478; *Cumberland Tel., etc., Co.* v. *Bills* (1904), 128 Fed. 272, 62 C. C. A. 620; *Dupree* v. *Tamborilla* (1902), 27 Tex. Civ. App. 603, 66 S. W. 595; *Jennison* v. *Waltham Gas Light Co.* (1909), 201 Mass. 352, 87 N. E. 594. In the absence of duty to inspect devolving on him, he does not assume risks of which he has no actual or constructive knowledge. *Arnold* v. *Connecticut Co.* (1910), 83 Conn. 97, 75 Atl. 78. If the lineman is required by his contract to make the inspection, he cannot recover for injuries resulting from his failure to inspect properly. *Adams* v. *Central Ind. R. Co., supra; Junior* v. *Missouri Electric Light, etc., Co.* (1895), 127 Mo. 79, 29 S. W. 988.

The averments in the complaint before us are that the hanger was bent and defective, that it broke by reason of long use, defective condition, and failure to inspect, that appellee knew of the defective and worn hangers along its line, that appellant had no knowledge of them, that appellee, knowing that the hanger on which appellant was required to work was likely to break, did not inform him of such hazard, that appellant had nothing to do with the construction, placement and maintenance of the hanger, had no knowledge of its defects, and had no cause or reason to apprehend its breaking. However, there is nothing in the complaint to show that the duty was on appellant to inspect, nothing to show that appellee did not maintain an independent inspecting force, on whose inspection it could rely. In such a case, the employe does not assume risks arising from the master's negligence. *Indianapolis Tel. Co.* v. *Sproul* (1912), 49 Ind. App. 613, 93 N. E. 463. In spite of the fact that the bent condition of the hanger must have been obvious,

614 APPELLATE COURT OF INDIANA,

Walling *v.* Terre Haute, etc., Traction Co.—60 Ind. App. 607.

we do not believe that it can be said to appear from the complaint that the defect was obvious, since it does not necessarily follow that knowledge that the hanger was bent was knowledge that it was so defective as to break, and it is averred that appellant was not informed of the danger and had no knowledge. The averments are that the defect was caused by appellee's negligence, and that it negligently failed to warn appellant of the danger, and it does not appear that appellant was under a duty to inspect. Hence, as a matter of pleading, the complaint must be held sufficient. We are not here concerned with the evidence necessary to support it.

For the error in sustaining appellee's demurrer to appellant's complaint, the judgment is reversed.

NOTE.—Reported in 111 N. E. 198. As to master's duty to inspect, having thought for servant's safety, see 98 Am. St. 297. On liability of master for injury to electric lineman through defect in pole or its appurtenances see 21 L. R. A. (N. S.) 774; 26 L. R. A. (N. S.) 509. On duty to instruct servant as affected by his knowledge or experience see 44 L. R. A. 40. For different forms of statement of the general rule with respect to the master's duty as to places and appliances furnished to servant, see 6 L. R. A. (N. S.) 602. On duty of inspection by master, see 41 L. R. A. 70. As to the application of the doctrine of assumption of risk to a lineman, see Ann. Cas. 1912 B 467. As to the liability of a master for injuries to servant on the ground of failure to inspect the premises, where the duty of inspection is on the injured servant, see 17 Ann. Cas. 1087. See, also, under (1) 26 Cyc 1097; (2) 26 Cyc 1196; (3, 5) 26 Cyc 1204; (4) 26 Cyc 1196, 1204; (6) 26 Cyc 1386.