## ADAMS v. CENTRAL INDIANA RAILWAY COMPANY.

[No. 5,628. Filed October 10, 1906.]

1. PLEADING.—*Complaint.*—*Master and Servant.*—*Work Outside Scope of Employment.*—*Variance.*—Where the complaint proceeds upon the theory of an injury to the servant, caused by dangerous work outside of the scope of his employment, and the proof shows that he was working within the scope thereof, a verdict in his favor is not supported.  p. 610.

2. MASTER AND SERVANT.—*Assumed Risk.*—*Telegraphs and Telephones.*—*Removal of Old Poles.*—*Defects.*—Where a servant, a part of whose duty was the removal of old telegraph poles and the substitution of new ones, depending upon his own inspection and oversight, climbed an old pole, released the wires at the top preparatory to taking it down, and, because of decay under the ground, rendering the supports placed at the foot of the pole by the servant's assistants insufficient, the pole fell injuring the servant, the risk of danger from such defect was assumed though the defect was not known, and could not have been discovered by the use of ordinary care, by such servant.  p. 611.

From Boone Circuit Court; *Samuel R. Artman,* Judge.

Action by Orion E. Adams against the Central Indiana Railway Company. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*B. F. Ratcliff, Terhune & Adney* and *John C. Perkins,* for appellant.

*U. C. Stover* and *S. M. Ralston,* for appellee.

ROBINSON, C. J.—Appellant sued for damages for a personal injury. Trial by the court, and upon a special

finding of the facts the court stated a conclusion of law in appellee's favor and rendered judgment accordingly.

The only error assigned is that the court erred in the conclusion of law.

The facts found are, in substance, as follows: From March 20, 1903, to October 31, 1903, appellant was employed by appellee as a telegraph repair man, and it was his duty to keep the telegraph poles in proper position, the wires connected, insulated, and clear of all obstructions, and to make all necessary repairs on the line; and, for the purpose of performing such work, he had authority to call on track and section foremen for assistance. In the discharge of his duty appellant was required to and did load and unload telegraph poles and distribute the same, dig holes for such poles, set the same, trim trees to prevent interference with wires, pull slack out of wires, put in new wires, wire the offices, transfer wires from old to new poles, and take down old poles and replace them with new ones. In the performance of such service appellant acted not only under his general employment but frequently upon special orders from appellee's superintendent and train dispatchers, specifying particular work that he should do. On October 31, appellant was ordered by the train dispatcher, to whose orders appellant was subject, to take down a certain pole and transfer the wires from it to a new pole; the removal of the old pole was necessary because it obstructed a driveway being opened to an elevator on the railroad; the pole was about twenty-eight feet high, ten inches in diameter at the base, and four inches at the top, about four feet of the top being formed by a splice; it was about four or five feet higher than the average, but some other poles on the line were as high and some higher; attached to the top were two line wires and a guy wire, extending about thirty feet to a tree, and from the ground to the top were spikes extending out four or five inches called "pole steps." The removal of the old pole and setting the new one and trans-

ferring the wires was work of the same kind and character which appellant had been performing at different intervals during his entire term of service. In removing old poles appellant was required to and did depend upon his own inspection of such poles to determine their safety in climbing the same to remove wires. Appellee had no person in its employ whose special duty it was to inspect the poles and determine their safety for appellant before he would climb the same. The removal of the pole was more dangerous and hazardous than removing an ordinary pole, on account of the pole-step spikes, because he could not climb or slide down the pole rapidly. Appellee did not inform appellant how long the pole had been in use, and did not give appellant any specific instructions as to the method by which the pole was to be removed. The pole had the appearance of an old pole, which appellant and appellee knew. Prior to October 31 appellant had climbed the pole at least twice. In June, 1903, he had climbed the pole and removed the line wires. On October 31, before attempting to take the pole down, appellant inspected it to see whether it was sound or defective. There were no defects or rotten places above the ground, and the pole appeared perfectly safe to climb. No reasonable inspection by either appellant or appellee would or could have disclosed any defect. Appellee did not know of any defect, and could not have known of such defect by the exercise of ordinary care. It was necessary for appellant to climb the pole to remove the line wires, and this was the customary and only way to do it. Appellant was assisted by two men furnished by appellee, who from the appearance of the pole were sufficient to remove it in safety, but on account of the hidden defects two men were not sufficient. After appellant had received the order to remove the pole, he requested the station agent to tell the section foreman to be present with all his section men, seven or eight, to assist. At the time of the accident, after instructing the two men appellee had furnished how to hold and brace the pole, ap-

pellee climbed the same to the top and loosened and removed the line wires as he had done in June. After the line wires were loosened and removed, and while appellant was still at the top of the pole and before he had time to climb down in safety, the pole broke off six or eight inches below the ground where the same was rotten, the bottom tilting up over the raising forks, throwing appellant to the ground, permanently injuring him. In the discharge of his duties appellant was required to conform to the following rule:

"Care must be taken to see that men are not injured by poles' breaking. When the last wire is removed from old poles, foremen will see that the poles are held up, either with ropes or forks, and in all cases the linemen should carry the last wire part way down the pole with him, or let it away from the pole with rope while he climbs down. The utmost care must be exercised in this matter, and no excuse will be received for failure to observe these instructions."

Prior to his injury appellant had made a requisition upon appellee for a rope which appellee had failed to furnish. In order safely to perform the work of removing the pole it was necessary to have a rope to stay the pole, or sufficient men to hold the same up with forks, and from the apparent condition of the pole two men with forks were sufficient, but on account of the actual, hidden condition two men were not sufficient.

Appellant's complaint proceeds upon the theory that the work appellant was ordered to do was without the scope of his employment, and was more hazardous and dangerous than the work for which he was employed.

1.    But the facts found are that the work he was engaged in when injured was work of the same kind and character as he had been performing at different intervals during his entire term of service as telegraph repairman of appellee, and that in the removal of old poles appellant was required to and did depend upon his own inspection of such

poles to determine their safety. The facts further show that he was given no specific instruction as to the method by which the pole was to be removed. The paragraphs of complaint must be construed as proceeding upon the theory that appellant had been specially ordered to perform work outside the line of his duty, and that this service was more hazardous and dangerous than he was regularly employed to do. The facts found make a very different case.

It clearly appears from the facts found that the injury was caused directly by the manner in which the work was done. It is unnecessary to cite authorities in support of the rule that it is the duty of an employer to furnish an employe sufficient help safely to perform the work required of him. But it is found as a fact that appellant was required to and did depend upon his own inspection of the poles to determine their safety, and that from the appearance of the pole two men were sufficient to remove it in safety. The pole had the appearance of an old pole, which fact appellant and appellee both knew. He was not relying upon any inspection of the pole by appellee, but depended upon his own inspection. From his knowledge of common affairs he must have known that an old pole might be defective beneath the surface of the ground, and that climbing a pole and loosening the wires might subject it to greater strain than that of sustaining line wires while in position. He knew that it was necessary for him to climb the pole to remove the wires, and that that was the only way the wires could be removed. He did inspect the pole and found no defect above the surface of the ground, and from his own inspection concluded that it was safe to climb it, and that two men would be enough to assist in taking it down. He must have known that poles become decayed beneath the surface of the ground after a time, and that a pole appearing to be old might be decayed beneath the surface. He was not controlled by any superior as to the manner of doing the work. He was employed to do

that kind of work and had been engaged at it for several months. As between him and the company, the company was under no obligation to inspect the pole to see if it was decayed. The burden was upon appellant to show that the accident was caused by some neglect of duty on appellee's part, but the finding fails to show such neglect. From the facts as found we can but conclude that the risk of falling on account of the weakness of old poles was a risk that appellant assumed by his contract of employment. *Dixon* v. *Western Union Tel. Co.* (1895), 68 Fed. 630; *Greene* v. *Western Union Tel. Co.* (1896), 72 Fed. 250; *Sias* v. *Consolidated Lighting Co.* (1901), 73 Vt. 35, 50 Atl. 554; *Flood* v. *Western Union Tel. Co.* (1892), 131 N. Y. 603, 30 N. E. 196; 1 Labatt, Master and Serv., §434; *McIsaac* v. *Northampton, etc., Co.* (1898), 172 Mass. 89, 51 N. E. 524, 70 Am. St. 244; *Evansville Gas, etc., Co.* v. *Raley* (1906), *ante,* 342; *Ervin* v. *Evans* (1900), 24 Ind. App. 335.

Judgment affirmed.