## HANS HOLDEN v. GARY TELEPHONE COMPANY.[1]

October 29, 1909.

Nos. 16,160—(6).

**Defective Pole — Question for Jury.**

In an action for personal injuries, one of the disputed questions was wheth-er a defective telephone pole was furnished by the master for the use of the servant in connection with his employment. *Held,* under the evidence, to be a question of fact for the jury.

**Same — Repair of Defective Bracket.**

Whether the repair of a particular appliance was within the scope of the servant's employment was also a question of fact for the jury.

Action in the district court for Norman county to recover $2,500 damages for personal injuries. Plaintiff, employed by another com-pany than defendant, was employed by defendant to locate the cause of trouble in defendant's service. The other facts are stated in the opinion. The case was tried before Grindeland, J., and a jury which returned a verdict in favor of plaintiff for $1,500. From an order denying defendant's motion for judgment notwithstanding the ver-dict or for a new trial, it appealed. Reversed and new trial directed.

*Andrew Engeset* and *F. H. Peterson,* for appellant.

*Ole J. Vaule, M. A. Brattland* and *William P. Murphy,* for re-spondent.

O'BRIEN, J.

The defendant, a corporation, owns and operates a rural telephone system, the main or trunk line of which was constructed by the corporation. The branch lines, extending to the houses of the in-dividual subscribers, were respectively constructed by the subscrib-ers served. The defendant claims that the obligation is upon each subscriber to keep his individual branch line in repair. Tolls re-ceived from the use of any part of the system belong to the corpo-

[1]Reported in 122 N. W. 1018.

ration. Some faulty condition upon defendant's system was preventing its proper operation, and plaintiff was employed to locate and remedy it. On August 14, 1907, he undertook this work, arriving in the course of his inspection at a branch line extending to a farmhouse owned and occupied by A. M. Parsons, upon the south side of the trunk line. The first pole upon this branch supported two wires, one extending from the trunk line south to the pole, thence east to Parsons,' and one leading to the west from the pole to another farmhouse. The pole was cottonwood, estimated to be from four to seven inches in diameter at the lower end, and was guyed by wire to the south, so that while the wires remained in position it was held upright. The bracket, sustaining the wires running east and west, was split at the lower end, was held by only one spike, and the weight of the wires had drawn it from its original position.

Plaintiff went to Parsons' house and renewed the batteries which he found there, after which the telephone operated properly. The new batteries were paid for by Mrs. Parsons. Leaving the house, he met Parsons, who spoke to him about the bracket, saying that he had not had time to repair it. The plaintiff stated that he had observed the condition of the bracket and would repair it. Without making any direct reply to this, Parsons invited the plaintiff to remain to dinner. The invitation was declined, and plaintiff proceeded to repair the bracket. He ascended the pole with the use of the ordinary spurs or climbers used by linemen, making no inspection of the pole except to strike it with a spur at a point about three feet from the ground, finding it sound at that point. Upon reaching the bracket he placed a belt around the pole and his body, and then pried the bracket from the pole, letting the wires to the ground. The pole was thoroughly decayed at a point just below the surface of the ground, and fell with the plaintiff as soon as the bracket and wires were detached from it, resulting in the breaking of plaintiff's ankle and some other minor injuries. The plaintiff had a verdict for $1,500. This appeal was taken by the defendant from an order denying its motion for a judgment in its favor notwithstanding the verdict or a new trial.

The trial court instructed the jury, as a matter of law, that the "stub line," which included the pole already described, should be deemed a part of the defendant's system, as to which it owed to plaintiff the same duty as to its main line, and "that under the evidence in this case the plaintiff, in fixing the bracket in question, was acting within the apparent scope of his authority." Defendant assigned many specific errors, which were properly grouped as follows: That the court erred in the admission of certain testimony; that the evidence established that the pole, the falling of which caused the injury, was not a part of the defendant's telephone system; that the repair of the bracket was not within the scope of plaintiff's employment; that defendant was free from negligence; that the injury resulted from a risk assumed by plaintiff; that plaintiff was guilty of contributory negligence; and that the verdict was excessive.

As the result of this decision must be another trial of the action, it seems proper to state fully our opinion as to the law applicable to the facts above stated.

Upon the trial the plaintiff called witnesses to testify as to the character and durability of cottonwood. The witness Hughes testified to his experience in using cottonwood for poles and fence posts; but, instead of expressing his opinion as to the durability and life of such poles or posts, he was permitted to state, against the defendant's objection, the results which he observed in particular instances occurring in his experience. Testimony of this character often appears upon cross-examination, when elicited by questions designed to test the knowledge or experience of the witness; but it never should be permitted to be given upon the examination in chief, when objection is made. With this exception, we see no error in permitting a duly qualified witness to express his opinion as to the durability of the wood.

The telephone system operated by defendant included the branch lines serving individual subscribers; but its liability in a particular instance depends upon facts to be found by the jury. If the obligation of keeping this particular branch line in repair rested entirely upon Parsons, or his neighbor to the west, or both of them,

and the plaintiff had knowledge of that fact, and understood and believed that he was in the employ of those men, rather than of the defendant, and that the defendant, in employing him, was acting merely as the agent of Parsons or other individuals, it is apparent that the relation of master and servant did not exist between the plaintiff and defendant. Upon the other hand, if the plaintiff's employment was by the defendant, and his instructions, reasonably interpreted, were that he was to locate and remedy the trouble, wherever it existed, whether upon the trunk or a branch line, the defendant cannot avoid responsibility by showing any private arrangement between it and its individual subscribers concerning the construction or maintenance of what must be admitted to be a necessary part of the entire system of lines and poles.

The claim as to the scope of the plaintiff's employment is very similar. The officers of the defendant only knew that the telephones were not operating properly, and requested the plaintiff to ascertain the cause of the difficulty and remedy it. Parsons' telephone operated satisfactorily after the renewal of the batteries. Yet the condition of the bracket was such that fresh obstructions to the use of the telephone might be anticipated in the near future. Did defendant expect that plaintiff would, in the performance of this particular employment, repair any such defect? Was plaintiff justified in so understanding his duties, or was he a volunteer assisting Parsons? It seems to us that these were questions for the jury, and that the trial court erred in holding, as a matter of law, that the defective pole was an appliance for the condition of which the defendant was responsible to the plaintiff, and, further, in charging the jury that the work of repairing the bracket was within the apparent scope of plaintiff's employment. Our conclusion is strengthened by the statement of the respective claims of the parties which the court made in its charge. In stating the defendant's position, no reference was made to its claim that it was not responsible for the condition of the pole which caused the injury, or to its further claim that the repairing of the bracket was not within the scope of plaintiff's employment. We hold that both of these questions should have been sub-

mitted to the jury. Had this been done, the evidence was sufficient to sustain a finding for the plaintiff.

Under the evidence in this case it cannot be said that the plaintiff was employed to make a general inspection of the defendant's telephone system. He was employed to locate the defects which were interfering with the operation of the line. The state of preservation in which the standing poles then were was a matter with which he had no concern. The plaintiff, therefore, was justified in assuming that the poles were fit for the uses to which they were applied, and he was required to use no more than ordinary care in examining the pole before he attempted to ascend it. If the jury found the pole was, as between the plaintiff and defendant, included in the defendant's system, and that the repair of the bracket was within the scope of plaintiff's employment, the defendant would properly have been held to the duty which the master owes the servant in furnishing him places and appliances for his work. Where the place or appliance is constructed of material liable to decay, the duty of proper inspection is also upon the master. Kelly v. Erie Tel. & Tel. Co., 34 Minn. 321, 25 N. W. 706. In this case the admitted condition of the pole would sustain a finding that defendant was negligent, if the jury had also found that the pole was a part of the defendant's system, and that the repair of the bracket was within the scope of plaintiff's employment.

The court properly instructed the jury as to the assumption of risk by the plaintiff, and the claim of his contributory negligence. The damages were not so excessive as to justify interference by this court; but for the reasons stated the order refusing a new trial cannot be sustained.

Order reversed and new trial directed.