## The Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. True.

[No. 7,742.   Filed December 13, 1912.   Rehearing denied March 26, 1913.]

1. PLEADING.—Complaint.—Sufficiency.—Negligence.—A complaint against a railroad company for damages resulting to plaintiff's land from the obstruction of a natural watercourse and the excavation of a new channel through which the waters of the stream were diverted, is not objectionable for failure to aver a negligent construction of the artificial waterway, where facts are averred from which no other inference than that of negligence can be drawn.   p. 159.

2. APPEAL.—Assignment of Errors.—Questions Reviewable.—Sufficiency of Complaint.—No question as to the sufficiency of the complaint is presented on appeal, where the assignment of errors does not show that any error is predicated upon the legal sufficiency of the complaint or upon appellant's exception to the action of the trial court in overruling a demurrer thereto.   p. 159.

3. APPEAL.—Assignment of Errors.—Questions Reviewable.—The assignment of errors constitutes appellant's complaint on appeal,

and only such questions will be considered as are thereby presented. p. 160.

4. RAILROADS.—*Construction.—Diversion of Watercourse.—Duty of Railroad Company.*—Although under the grant of power given by subd. 5, §5195 Burns 1908, §3903 R. S. 1881, a railroad company may fill up a natural watercourse and lay its tracks on the embankment constructed in the bed of such stream, it is charged by the same section with the duty of providing a waterway no less efficient than the one appropriated. p. 160.

5. APPEAL.—*Review.—Admission of Evidence.*—Where, in an action for damages caused by the filling of a watercourse and diverting the water into an artificial channel, appellee had testified that the artificial channel was not of sufficient size and capacity to accommodate the water formerly flowing through the creek, and that it was enlarged by washing, that a stone wall had washed out and earth and rock deposited in the creek filling it four or five feet, the court did not err in permitting appellee to answer a question asking him to state, if he knew, what caused the filling at another point in the creek, since the question, taken in connection with the examination immediately preceding, called for a fact and not a conclusion. p. 160.

6. TRIAL.—*Interrogatories to Jury.—Propriety.—Action for Damages.*—In an action against a railroad company for damages resulting from the filling of a creek and diverting the water through a new channel constructed by defendant, the court did not err in refusing to submit to the jury interrogatories requested by defendant asking the market value per acre of plaintiff's bottom lands both before and after the filling and relocation of the creek, and asking the market value per acre of the farm other than the bottom lands both before and after such filling and relocation, since the plaintiff could not under the issues prove his damages piecemeal and the ultimate fact to be found was the damage to the farm as an entirety. pp. 161, 162.

7. WITNESSES.—*Cross-Examination.*—On cross-examination a party is clearly within his rights in asking a witness, who has testified as to values, any question pertinent to the direct examination which tends to test the knowledge of values as given by such witness. p. 161.

8. DAMAGES.—*Trial.—Interrogatories to Jury.—Itemizing Damages.*—As a general rule it is improper in tort actions to require the jury to answer interrogatories itemizing the elements of damage, where it is unnecessary to plead such elements of damage. p. 162.

9. TRIAL.—*Verdict.—Interrogatories to Jury.—Duty of Court.*—It is the duty of the court to require the jury to answer pertinent and material interrogatories when properly requested in case a

general verdict is returned, and, in a proper case, the court's refusal to do so is reversible error. p. 162.

10. TRIAL.—*Verdict.—Special Findings.—Object of Special Findings.*—The object of the special finding is to control the general verdict, if, under the law the particular facts found are inconsistent therewith, and also to test the correctness of such general verdict. p. 162.

11. TRIAL.—*Verdict.—Answers to Interrogatories.*—A general verdict is to be found upon all the evidence, and each interrogatory is to be answered from the evidence without reference to the general verdict or to the answer to any other interrogatory. p. 162.

From Dearborn Circuit Court; *George E. Downey,* Judge.

Action by Stephen W. True against The Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*L. J. Hackney, F. L. Littleton* and *T. S. Cravens,* for appellant.

*Estal G. Bielby,* for appellee.

ADAMS, J.—Prior to and during the year 1905, the appellant made certain changes in its railroad and roadbed, by reducing the grade and straightening its tracks. At a point in Dearborn County, Indiana, near to the lands of appellee, appellant, in the prosecution of such work, filled up the channel of Tanner's Creek, a natural watercourse, for a distance of 1000 feet, and constructed a fill of earth and stone in the bed of said natural watercourse for its track to rest upon, and excavated a new channel for said creek immediately south of the original watercourse. The natural channel of Tanner's Creek was sixty feet wide, and of ample capacity to receive and carry off the water, for which it provided an outlet, without injury to appellee's lands. The channel constructed by appellant was but twenty feet wide, and not large enough to accommodate the water received into said creek during the rainy season. As a result a new channel forty-five feet wide was washed out for a distance of 750 feet, and earth and stone washed from said new

channel was deposited in the bed of said creek at the point where Fly's Run empties into Tanner's Creek. These are briefly some of the averments of the complaint, with the further averment that on account of insufficient capacity of the new waterway, appellee's bottom lands were rendered unfit for farming purposes, to his damage in the sum of $3,000. An issue of fact was formed by an answer in denial, the cause was tried by a jury, resulting in a verdict for appellee in the sum of $850, upon which verdict the court rendered judgment.

The errors assigned separately are all embraced in the specification that the court erred in overruling appellant's motion for a new trial. With its general verdict, the jury returned answers to certain interrogatories. By these answers, the jury found that the bottom lands of appellee at the time of the reconstruction of appellant's railway embraced ten acres, and that appellee's entire farm embraced 169 acres; that the bottom lands were not subject to overflow from Tanner's Creek or Fly's Run before such reconstruction; that the market value of appellee's farm was $35 per acre before, and $30 per acre after the reconstruction and relocation of appellant's railway; that ten acres of appellee's bottom land were subject to overflow after the relocation of Tanner's Creek, and that no part of said bottom lands was subject to overflow before such reconstruction.

Appellant urges in its brief that the complaint is

1. insufficient in that it does not aver negligent construction of the artificial waterway. We think the complaint is good, as facts are averred from which only the inference of negligence could be drawn. But, even if this were not true, the sufficiency of the complaint is not

2. before us for determination. The assignment of errors does not show that any error is predicated upon the legal sufficiency of the complaint or upon appellant's exception to the holding of the court in overruling its demurrer thereto. It has been held so often as to become almost ele-

mental that the assignment of errors constitutes the appellant's complaint in this court, and only such questions will be considered as are presented by the assignment.

Under the grant of power given by subd. 5, §5195 Burns 1908, §3903 R. S. 1881, the appellant had a right to fill up the natural watercourse, and to lay its tracks on the embankment constructed in the bed of such watercourse. But, by the same section, appellant was charged with the duty of providing a waterway no less efficient than the one appropriated. It is not seriously contended by appellant that such waterway was provided, and the questions presented by the record and briefs relate to the damages assessed by the jury, and the action of the court in rejecting and refusing to give to the jury certain interrogatories requested by the appellant, the ruling of the court in rejecting each of said interrogatories being separately assigned as a cause for a new trial. Appellant also urges as one of the grounds for a new trial that the court erred in permitting appellee to testify, over objection, in answer to the question "you may state to the jury, if you know, what it is that has caused the change of depth of the channel of Tanner's Creek at this particular place?" as follows: "A filling up of the channel with rock and soapstone and so forth." Appellant insists that this question calls for an opinion and not for a statement of fact. The record discloses that appellee, before the question objected to was asked, had testified that the new channel constructed by appellant was not of sufficient size and capacity to accommodate the water formerly carried through Tanner's Creek, and that the new channel was enlarged by washing, that there was a stone wall washed out, and earth and rock deposited in the creek filling it four or five feet. The witness was then asked to state, if he knew, what caused the filling at another point in the creek. We think the question

asked, taken in connection with the examination immediately preceding, called for a fact and not a conclusion.

A more serious proposition is presented by the re-
6. fusal of the court to submit to the jury interrogatories requested by appellant. By interrogatory No. 10 the jury was asked to find specially the market value per acre of appellee's bottom lands, as a part of the farm, before the reconstruction of appellant's railroad and the relocation of Tanner's Creek. By interrogatory No. 11, the jury was asked to find such value after such reconstruction and relocation. By interrogatory No. 14, the jury was asked to find the market value per acre of the farm other than the bottom lands, taken as a part of the farm, before the reconstruction of appellant's railroad and the relocation of Tanner's Creek. By interrogatory No. 15, the jury was asked to find the market value of such part of the farm as a part thereof, after such reconstruction and relocation. The evidence offered from which each of these interrogatories might have been answered by the jury was brought out on cross-examination of witnesses testifying as to the market value of the farm before and after the relocation of appellant's railroad. It was proper cross-examination,
7. and appellant was clearly within its rights in asking any question pertinent to the direct examination, which tended to test the knowledge of values as given by appellee's witnesses, to the end that the jury might determine their credibility and the weight to be given to the testimony of each, in returning its general verdict. But the ultimate fact to be found was the damage to the farm
6. as an entirety, and not to its several parts as distinct entities or as parts of the whole. Under the issues formed in this case, the plaintiff could not prove his damages piecemeal, and the defendant was not entitled to have the jury specially find the damages in that manner. By §572 Burns 1908, Acts 1897 p. 128, it is provided "That in all actions hereafter tried by a jury, the jury shall render

a general verdict, but in all cases, when requested by either party, the court shall instruct them when they render a general verdict to find specially upon particular questions of fact to be stated to them in writing in the form of interrogatories.   *   *   *'' The general rule is that in actions of tort, it is improper to require the jury to answer interrogatories itemizing the elements of damage, where it is unnecessary to plead such elements of damage. *Elijah* v. *Dowling* (1912), 49 Ind. App. 515, 97 N. E. 551. But it is the duty of the court to require the jury to answer pertinent and material interrogatories when properly requested in case a general verdict is returned. *Clegg* v. *Waterbury* (1882), 88 Ind. 21, 23. And in a proper case it is reversible error for the court to refuse to submit interrogatories to the jury. *Mc Cullough* v. *Martin* (1895), 12 Ind. App. 165, 167, 39 N. E. 905. The object of the special finding is that if, under the law, the particular facts found are inconsistent with the general verdict, the latter shall thereby be controlled. *Manning* v. *Gasharie* (1866), 27 Ind. 399, 409. The further object of the special findings is to test the correctness of the general verdict. *McCullough* v. *Martin, supra.*

It will be noted that a jury is only required to answer interrogatories in the event that a general verdict is returned. The general verdict is to be found upon all the evidence, and each interrogatory is to be answered from the evidence without reference to the general verdict or to the answer to any other interrogatory. Thus, in the instant case, if the special answers disclosed a difference between the amount of damages to the whole farm and the aggregate damages to its several parts, and the general verdict was supported by the answer as to the whole farm, the conflicting answers would but nullify each other, and the general verdict would stand. But independent of this consideration, we think the rejected

interrogatories, in effect called upon the jury to say what amount of damages was awarded on account of the bottom lands and what amount on account of the up lands. This would require an itemizing of damages in an action where special damages are not claimed.

The judgment is affirmed.

NOTE.—Reported in 100 N. E. 22. See, also, under (1) 29 Cyc. 569; 40 Cyc. 584; (2) 2 Cyc. 988, 989; (3) 2 Cyc. 980; (4) 33 Cyc. 325, 326; (5) 17 Cyc. 62; (6) 38 Cyc. 1909; (7) 40 Cyc. 2489, 2490; (8) 38 Cyc. 1912; (9) 38 Cyc. 1908, 1909; (10) 38 Cyc. 1907; (11) 38 Cyc. 1919. As to opinions of a nonexpert and where and when admissible in evidence, see 19 Am. Rep. 410; 30 Am. St. 38. As to cross-examination to test accuracy and animus, see 14 Am. St. 480.