CITIZENS TELEPHONE COMPANY ET AL. *v.* PRICKETT.

[No. 23,239. Filed November 25, 1919. Rehearing denied February 20, 1920.]

1. MASTER AND SERVANT.—*Concurring Negligence.—Joint Liability.* —In an action against a telephone company and two street improvement contractors for injuries to the former's employe, in which the complaint alleged that a pole which the plaintiff was working upon had become decayed and unfit for use, that one of the contractors further weakened it by cutting half way round it to the depth of three inches, that the other contractor further weakened it by additional cutting and by attaching a pulley thereto by means of which a heavy roller was pulled over the street, which facts were known by the employer before the injury, but the employer continued to use the pole and failed to warn the plaintiff of its condition, that by reason of its weakened condition the pole broke, causing the employe's injury, that by reason of earth piled round the base of the pole its unsafe condition was concealed and unknown to the plaintiff, the allegations were sufficient to show negligence against each defendant, the failure of the company to warn not being such intervening human agency as to make the acts of the contractors a remote cause; nor do such allegations compel the conclusion that the plaintiff failed to. exercise due care to discover the defect. pp. 146, 153, 155.

2. TRIAL.—*Special Interrogatories.—Materiality.* — Interrogatories that were not relative to a material issue, in the sense that they called for particular facts that would be inconsistent with the general verdict or valuable as a test of the correctness of the

Citizens Tel. Co. *v.* Prickett—189 Ind. 141.

general verdict, should not have been submitted to the jury. p. 148.

3. APPEAL.—*Submission of Interrogatories.*—*Discretion of Court.*— The submission of interrogatories to the jury is under the supervision of the trial court, and the Supreme Court will interfere with such discretion only where it has been abused. p. 148.

4. APPEAL.—*Effect of Interrogatories.*—*Scope of Examination.*— *Harmless Error.*—In determining the effect on the jury of certain interrogatories on the subject of damages, the Supreme Court may search the record; and the submission thereof, though subject to criticism, is not reversible error where the record shows them to have been harmless. p. 149.

5. APPEAL.—*Special Interrogatories.*—*Conflict.*—*Determination.*—In determining whether special interrogatories are in irreconcilable conflict with the general verdict, the court on appeal is confined to the complaint, answer, general verdict and the answers to the interrogatories. p. 149.

6. TRIAL.—*Verdict.*—*Special Interrogatories.*—*Presumption.* — The general verdict must stand unless, with the aid of all reasonable presumptions within the issues in its favor, it cannot be reconciled with the answers to the interrogatories unsupported by any inferences. p. 149.

7. TRIAL.—*Special Interrogatories.*—*Conclusions.*—In determining the question of conflict between the general verdict and the answers to special interrogatories, an interrogatory calling for a conclusion will not be considered. p. 150.

8. MASTER AND SERVANT.—*Contributory Negligence.*—*Evidence.*— *Sufficiency.*—To show contributory negligence on the part of an injured servant, it must appear that he did not use such care as a person of ordinary prudence would have used in view of the known danger, or of that which he should have known. p. 151.

9. MASTER AND SERVANT.—*Place to Work.*—*Unknown Defect.*— *Ordinary Care.*—Ordinary care did not require a servant of a telephone company, who was injured when a defective pole upon which he was working broke and fell, to inspect the pole, before climbing it, for unknown latent defects caused by cuts made thereon by the company's codefendants, which latent defects concurred in causing the accident, even though he were required to inspect beneath the surface of the ground for defects caused by decay. pp. 151, 153.

10. MASTER AND SERVANT.—*Place to Work.*—*Reliance on Master's Duty to Inspect.*—A telephone company's lineman has the right to assume before climbing a pole that the company has performed its duty of inspecting the pole beneath the surface of the

ground, unless the duty of inspection devolved on him either by contract or by the company's known method of doing business. p. 152.

11. MASTER AND SERVANT.—*Place to Work.—Master's Duty.—Care Required of Servant.*—The duty of the master to furnish the servant a safe place to work is a continuing one, but this duty does not relieve the servant from exercising ordinary care for his own safety against the usual and general hazards ordinarily incident to the employment. p. 152.

12. NEGLIGENCE.—*Proximate Cause.*—Though an injury, to warrant recovery of damages, must be the direct result of the alleged negligence, it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended, and it is not necessary that the identical injury should have been foreseen. p. 154.

13. MASTER AND SERVANT.—*Contributory Negligence.—Effect of General Verdict.—Interrogatories.*—In a lineman's action against a telephone company and two street improvement contractors whose negligence concurred in causing the plaintiff's injuries, a general verdict for the plaintiff amounted to a finding that he was not guilty of contributory negligence, the answers to interrogatories not being in conflict therewith. p. 158.

14. MASTER AND SERVANT.—*Contributory Negligence.—Jury Question.*—Under the Employers' Liability Act, Acts 1911 p. 145, §§8020a-8020h Burns 1914, contributory negligence is a matter of defense. p. 158.

15. MASTER AND SERVANT.—*Place to Work.—Inspection.—Assumption of Risk.*—In a lineman's action for injuries, instructions placing the duty on the defendant company to inspect poles as to their safety were not objectionable on the ground that the lineman occupied the place of the master in that regard, in view of evidence tending to show that the defendant's superintendent and inspector, before the plaintiff's injury, had examined the pole and saw fresh dirt piled round its base, but did not examine below the surface for defects thereby concealed. p. 158.

16. TRIAL.—*Instructions Without Issues.*—In a lineman's action for injuries against a telephone company and two street improvement contractors who had weakened an already defective pole, which fell when the plaintiff was working upon it, an instruction that, if the acts of one of the contractors in cutting the pole would not have caused it to fall under the plaintiff's weight, aside from its weakened condition later caused by other parties, there could be no recovery against such contractor, was properly refused where there was no evidence upon which to base it. p. 159.

17. **TRIAL.**—*Instructions Erroneous in Part.—Refusal.*—There was no error in refusing a tendered instruction part of which was unsupported by the evidence, since if for any reason part of an instruction should not be given, the whole instruction should be refused.  p. 162.

18. **DAMAGES.**—*Excessive.*—A verdict for $12,000 in a lineman's action against a telephone company and two street improvement contractors for injuries, caused by the falling of a defective pole upon which the plaintiff was working, was not excessive, where under the evidence it was not so large that it could not be explained on any reasonable hypothesis other than as a result of the jury's passion, partiality, corruption or consideration of some improper element.  p. 163.

19. **TRIAL.**—*Limiting Application of Evidence.—Necessity of Request.*—In a lineman's action for injuries against a telephone company and two street improvement contractors, the testimony of a witness, brought out by one of the contractors, was not subject to objection by the company on the ground that the fact testified about was not an issue between the company and such contractor; the remedy of the company, if the evidence was inadmissible as to it, was to request an instruction limiting it to the parties against whom it was admissible.  p. 163.

20. **EVIDENCE.**—*Opinions.*—In a lineman's action for injuries sustained when a defective pole fell, brought against a telephone company and street improvement contractors who had weakened the pole, the opinion of a nonexpert witness as to whether the pole would sustain the weight of a man working at the top before it was cut by the contractors was inadmissible where the defective part of the pole was in evidence and there was nothing about it that could not be fully presented to the jury without an opinion.  p. 163.

21. **MASTER AND SERVANT.**—*Knowledge of Dangerous Working Place.—Burden of Proof.*—In an action by a lineman, under the Employers' Liability Act, Acts 1911 p. 145, §8020a *et seq.* Burns 1914, for injuries sustained when a defective pole broke and fell, the burden was on the defendant telephone company to show that it did not know, or that by the exercise of ordinary care could not have known, of the dangerous condition of the pole in time to have repaired it.  p. 164.

From Howard Circuit Court; *Lloyd McClure,* Special Judge.

Action by Orel S. Prickett against the Citizens Telephone Company and others.  From a judgment for the plaintiff, the defendants appeal.  *Affirmed.*

*James C. Blacklidge, Conrad Wolf, Earl B. Barnes, John R. McIntosh, Bell, Kirkpatrick, Purdum & Voorhis, John B. Joyce* and *W. A. Ketcham,* for appellants.

*Broo & Strode, Barnabas C. Moon, McConnell, Jenkines, Jenkines & Stuart,* for appellee.

MYERS, J.—Appellee brought this action against appellants to recover damages for personal injuries alleged to have been caused by the latter's negligence. Separate and several demurrers by appellants to the complaint for want of facts were overruled. A general denial by each of the appellants formed the issues submitted to a jury, and with its general verdict in favor of appellee and against all of the appellants for $12,000, it returned answers to 138 interrogatories, of which appellee submitted seventy-one, Citizens Telephone Company submitted fifty-three, and Watson and Company, fourteen. Over the separate motions of appellants for judgment on the answers of the jury to the interrogatories, and their separate motion for a new trial, judgment was rendered on the general verdict. From this judgment appellants appeal, and each have assigned separate assignments of error. We shall give attention to the errors, only, relied on for a reversal.

(1) Does the complaint state facts sufficient to withstand each of the demurrers? The complaint in substance alleged that appellant Citizens Telephone Company was the owner and engaged in operating a telephone plant in the city of Kokomo, Indiana, with planted poles supporting wires and cables upon many streets of that city, including Monroe and McCann streets; that it employed more than five persons; that on November 18, 1914, appellee was employed by the

telephone company, and, with other of its employes, and by its direction, he was engaged in dismantling one of the company's lines located on the east side of McCann street; that the particular duty of appellee on said date was to saw off and take down the cross-arms on the telephone poles after other employes had removed the wires therefrom; that for this purpose he climbed a pole located at the southeast corner of McCann and Monroe streets, and while near the top thereof, with his body strapped thereto, the pole suddenly and without warning fell and carried appellee with great violence to the surface of the street, whereby he was seriously injured. That on August 18, 1913, the firm of Watson and Company entered into a contract with the city of Kokomo to improve and pave Monroe street, and shortly thereafter this firm made a contract with the firm of O'Conner and Son to surface Monroe street as required by the Watson contract with the city.

The charge of negligence is that the pole on which appellee was working when injured and in use by the company had become decayed and rotten, especially in the heart and center, and thereby rendered unfit for use and dangerous; that Watson and Company in the execution of the improvement contract did negligently, at a point slightly below the surface of the street, cut fully one-half around the pole to a width and depth of three inches, thereby greatly weakening it to the knowledge of the company for more than sixty days before it fell; that afterwards O'Conner and Son further weakened said pole by negligently and wrongfully cutting into it at a point six inches below the original cut and by blocking out the wood between

the cuts, all of which the telephone company knew for more than thirty days prior to appellee's injury; that thereafter, and more than twenty days before November 18, 1914, O'Conner and Son, with the knowledge of each codefendant, negligently moved a six-ton roller over and along Monroe street by means of a pulley attached to said pole, thereby cracking and further weakening it; that the telephone company, knowing of the dangerous condition of the pole prior to appellee's injury, continued its use and negligently failed to give appellee any warning of its dangerous condition; that by reason of the rotten condition of the pole and the weakening thereof by the acts of Watson and Company and O'Conner and Son the pole from the weight of plaintiff's body thereon broke at or just beneath the surface of the ground; that by earth piled around the base of the pole its unsafe condition was concealed, which condition was unknown to appellee.

It is insisted that the complaint fails to show any knowledge to appellants with reference to the condition of the pole which was not open and obvious, and not an incident to appellee's employment or a defect which he could not have ascertained by the exercise of ordinary care.

By these objections appellants are seeking to have the doctrine of assumption of risk and contributory negligence applied to the pleaded facts. Neither of the demurrers question the complaint on the ground of assumption of risk, and the facts exhibited are not such as to compel the conclusion that appellee failed to exercise due care for his protection. The complaint was sufficient to require an answer from all of the defendants. *Indiana Bridge Co.* v. *Shepp* (1914),

182 Ind. 610, 108 N. E. 107, *Greenawaldt* v. *Lake Shore etc., R. Co.* (1905), 165 Ind. 219, 74 N. E. 1081. This question and the question of intervening human agency will arise under the next assignment where it will be further considered.

(2) Each of the appellants moved for judgment in their favor on the answers of the jury to the interrogatories notwithstanding the general verdict.

At this point, although among the causes for a new trial we deem it proper to say that many interrogatories submitted to the jury, however answered, were not relative to a material issue, in the sense that they called for particular facts which would be inconsistent with the general verdict or valuable as a test of the correctness of the general verdict, and for these reasons such interrogatories should not have gone to the jury. *City of Indianapolis* v. *Lawyer* (1871), 38 Ind. 348, 371; *Ramseyer, Exr.,* v. *Dennis* (1918), 187 Ind. 420, 116 N. E. 417, 119 N. E. 716; *Cleveland, etc., R. Co.* v. *True* (1913), 53 Ind. App. 156, 100 N. E. 22; *Fort Wayne Cooperage Co.* v. *Page* (1908), 170 Ind. 585, 84 N. E. 145, 23 L. R. A. (N. S.) 946; 2 Thompson, Trials (2d ed.) §2682. The submission of interrogatories to the jury is under the supervision of the trial court, and it is only when an abuse of discretion is shown will this court interfere with that court's action.

It is insisted that a number of the interrogatories submitted by appellee had reference only to matters affecting damages, and, while they did not call for answers inconsistent with the general verdict, yet they were exceedingly harmful because effective as an argument to increase damages. After a careful consideration of this question, we

have reached the conclusion that these particular in-
terrogatories are not as vicious as appellants
4.    would have us regard them, yet it must be
admitted that they are subject to criticism, for
they bear some evidence of a motive which should be
curbed.   For the purpose of determining their effect
on the jury on the question of damages, we may look
to the entire case as presented by the record.   This
we have done, with the result that in our opinion no
harm in this case resulted from their submission.

Looking to the interrogatories and answers there-
to for the purpose of determining whether or not they
are in irreconcilable conflict with the general
5.    verdict, we are confined to the complaint, an-
swers, general verdict, and the answers of the
jury to the interrogatories.   *Jeffersonville Mfg. Co.* v.
*Holden* (1913), 180 Ind. 301, 102 N. E. 21; *American
Car, etc., Co.* v. *Adams* (1912), 178 Ind. 607, 99 N. E.
993.

The general verdict is presumed to reflect the rights
of the parties upon the substantial merits of the mat-
ters in controversy, and it must stand unless,
6.    with the aid of all reasonable presumptions
within the issues in its favor, it cannot be recon-
ciled with the answers to the interrogatories unsup-
ported by any inferences.   *Cleveland, etc., R. Co.* v.
*Blind* (1917), 186 Ind. 628, 117 N. E. 641; *Lake Erie,
etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, 102, 67
N. E. 923.

In this connection our attention is called especially
to the answers to interrogatories Nos. 11, 12, 24, 30,
47 and 48 submitted by the telephone company for
the purpose of sustaining the contention that appel-
lee was guilty of contributory negligence in climbing

the pole without first examining it just beneath the surface of the ground. These answers show: (11) That appellee for many months was in the employ of the telephone company to construct, repair, dismantle, remove and work on telephone lines and poles; (12) that appellee knew that the telephone poles were liable to decay at and immediately below the ground; (24) that the pole was cut to the decayed part; (47, 48) when appellee sawed off the cross-arms, they fell astride of the guy wire and the pole sprung to the east.

Interrogatory No. 30 calls for a conclusion and cannot be considered for any purpose. *Marietta Glass Mfg. Co.* v. *Pruitt* (1913), 180 Ind. 434, 439, 7. 102 N. E. 369; *Terre Haute, etc., Traction Co.* v. *Hunter* (1916), 62 Ind. App. 399, 417, 111 N. E. 344. Other answers show that appellee was an experienced lineman; that the diameter of the pole where it broke was fourteen inches and was decayed at the heart, and between May 4 and November 18, 1914, had been cut to a depth of two or three inches and to the decayed portion; that in July or August, 1914, a chain was attached to the pole, and by means of a pulley a heavy mixer was moved, and in doing so the pole was cracked; that the cut in the pole and its decayed condition at that point was concealed by dirt piled around the pole; that appellee before he climbed the pole did not know of its rotten condition or that it had been cut into or that it had been cracked; that the telephone company prior to the day of the injury knew of the rotten condition of the pole; that it had been cut into and was cracked; that by reason of its rotten, cut and cracked condition it fell; that the pole above the ground gave no appearance of its decayed, cut, or

cracked condition; all wires had been removed from the pole except the guy wire; appellee examined the pole before climbing it, but did not remove the dirt which covered its defective condition.

The answers are to be taken together and considered with the general verdict, which amounted to a finding that appellee was not guilty of contributory negligence. "To show contributory negligence it must appear that he (appellee) did not use such care as a person of ordinary prudence would have used in view of the known danger," or which he ought to have known. *Inland Steel Co.* v. *King* (1915), 184 Ind. 294, 300, 110 N. E. 62.

But to appellee, what was the known danger? From the exposed appearance of the pole, it seemed to be safe, and the answers show that it had been used that day by others in removing the wires.

Its dangerous condition would have been exposed by removing the dirt, but as it stood the defect as to appellee was latent. True, he knew that the pole would in time decay at or beneath the surface of the ground. But it does not appear that the pole fell because of its rotten condition alone. He did inspect the pole above the ground, and there is nothing to indicate that the pole would not have stood, had it not been for the acts of Watson and Company and O'Conner and Son. At least the jury found that it was the combined rotten, cut, and cracked condition of the pole that caused it to fall. However, if it be admitted that ordinary care required appellee to make an inspection of the pole beneath the surface of the ground, certainly such requirement would be only for the purpose of discovering the defects wrought by time in use, and not for defects caused by the master

or by strangers unless he had been cautioned so to do, and there is no claim of any such notice. "A servant does not, because he knows of one defect, take the risk of another of which he has no knowledge, and if both concur in producing his injury, he is entitled to recover if the accident would not have happened but for the unknown defect." 3 Labatt, Master and Servant (2d ed.) 3208.

For aught shown by these answers, it was the duty of the telephone company to inspect its poles, and, if this be true, appellee could assume before climbing the pole that his master "had inspected the pole beneath the surface of the ground unless the duty of the inspection devolved on him either by his contract or by the company's method of doing business to his knowledge." *La Duke* v. *Hudson River Telephone Co.* (1909), 136 App. Div. 136, 120 N. Y. Supp. 171. See, also, *Miner* v. *Franklin County Telephone Co.* (1910), 83 Vt. 311, 75 Atl. 653, 26 L. R. A. (N. S.) 1195; *McDonald* v. *Postal Telegraph Co.* (1900), 22 R. I. 131, 46 Atl. 407; *McGuire* v. *Bell Telephone Co.* (1901), 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437; *Munroe* v. *Fred T. Ley & Co.* (1907), 156 Fed. 468, 84 C. C. A. 278; *Texas, etc., R. Co.* v. *Kelly* (1904), 98 Tex. 123, 80 S. W. 79; *Holden* v. *Gary Telephone Co.* (1909), 109 Minn. 59, 63, 122 N. W. 1018; *Bland* v. *Shreveport, etc., R. Co.* (1896), 48 La. Ann. 1057, 20 South. 284, 36 L. R. A. 114.

Appellee was employed by the telephone company as a lineman, and at the time he was injured he was at work in the line of his employment. The law imposes upon all employers the duty of exercising ordinary care to provide their servants with a reasonably safe place to work, and this

duty is a continuing one. *Chicago, etc., R. Co.* v. *Mitchell* (1915), 184 Ind. 383, 110 N. E. 215. However, this imposition does not relieve the servant from ordinary care for his own safety against the usual and general hazards ordinarily incident to his employment. *Lehigh, etc., Cement Co.* v. *Bass* (1913), 180 Ind. 538, 551, 103 N. E. 483; *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596, 103 N. E. 652; *Lavene* v. *Friedrichs* (1917), 186 Ind. 333, 115 N. E. 324, 116 N. E. 421.

It is the contention of appellants that, as appellee was an experienced lineman, it was his duty to make an inspection of the pole below the surface of the ground before climbing it, if he would free himself from the charge of contributory negligence. In support of this announcement they cite: *Evansville Gas, etc., Co.* v. *Raley* (1906), 38 Ind. App. 342, 76 N. E. 548, 78 N. E. 254; *Adams* v. *Central Ind. R. Co.* (1906), 38 Ind. App. 607, 78 N. E. 687; *Free* v. *Home Telephone Co.* (1917), 65 Ind. App. 9, 116 N. E. 600; *McIsaac* v. *Northampton Elec., etc., Co.* (1898), 172 Mass. 89, 51 N. E. 524, 70 Am. St. 244. All these cases are distinguishable from the case at bar, for in each of them the risk was an incident to the business in which the servant was employed. If the facts in the present case were free from all human acts tending to weaken the pole at the point where it broke, and the danger arose solely from its long-continued use, we should have a case to which the above cases cited by appellants would be in point.

(3) On behalf of Watson and Company and O'Conner and Son it is earnestly insisted that no recovery should be had against them for the reason that the telephone company had notice of trespass committed by them in time to have

made the pole safe or to have discontinued its use and thereby avoided the injury. Upon these premises these appellants seek protection behind the alleged omissions of the telephone company as an intervening human agency to make remote the negligence charged against them. The complaint charges these appellants with negligence in cutting the pole in question to the depth and width as stated, and by using it in a manner whereby it was cracked and weakened and rendered dangerous to persons working upon it. The answers of the jury in effect show that the cutting and cracking of the pole, together with its decayed condition, combined to make it unsafe for persons working thereon. It will not do to say that, in the light of the allegations of the complaint and the answers in question, under the attending circumstances an ordinarily prudent person ought not to have reasonably foreseen that injury might probably occur as the result of the alleged negligence.

While the injury must be the direct result of the alleged negligence, yet it will not be considered too remote if, according to the usual experience 12. of mankind, the result ought to have been apprehended; nor was it necessary that appellants should foresee the identical injury to appellee involved here. *Billman* v. *Indianapolis, etc., R. Co.* (1881), 76 Ind. 166, 40 Am. Rep. 230; *City of Anderson* v. *Fleming* (1902), 160 Ind. 597, 601, 67 N. E. 443, 66 L. R. A. 119; *Nickey* v. *Steuder* (1904), 164 Ind. 189, 192, 73 N. E. 117; *King* v. *Inland Steel Co.* (1911), 177 Ind. 201, 207, 96 N. E. 337, 97 N. E. 529; *Fostoria Oil Co.* v. *Gardner* (1919), (Ind. App.) 124 N. E. 467, 469; *Belt R., etc., Co.* v. *McClain* (1914), 58 Ind. App. 171, 106 N. E. 742; *Cleveland, etc., R. Co.* v.

*Clark* (1912), 51 Ind. App. 392, 408, 97 N. E. 822; *Boston, etc., R. Co.* v. *Shanly* (1871), 107 Mass. 568, 579. As is said in the case last cited: ''The many ways in which wrongdoers may injure another give rise to some nice distinctions; but when their several acts directly contribute to produce a single injury, each being sufficient to have caused the whole, and it is impossible to distinguish the portions of injury caused by each, that concurrence ought to render each of them liable for the whole in a joint action.'' In *Union Pacific R. Co.* v. *Callaghan* (1893), 56 Fed. 988, 6 C. C. A. 205, the court in speaking of an independent intervening agency said: ''The independent intervening cause that will prevent a recovery on account of the act or omission of a wrongdoer must be a cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated. The concurrent or succeeding negligence of a fellow servant or a third person which does not break the sequence of events is not such a cause, and constitutes no defense for the original wrongdoer, although, in the absence of the concurrent or succeeding negligence, the accident would not have happened.'' The negligence of the telephone company in failing to warn appellee, after it had notice of the dangerous condition of the pole, was not an intervening cause that interrupted or turned aside the natural sequence of events, or prevented the natural and probable effect of the negligent cutting of the pole. It simply failed to interpose the care of the company to prevent the probable result. The failure to warn af-

fected only the liability of all of the appellants and in no way changed the result of the original acts of negligence. Had the warning been given, it would not have changed the dangerous condition, but such condition would still have existed, and appellee might have been injured in exactly the manner that this injury did occur. But in that case none of the appellants would have been liable, for the reason that appellee would then have been guilty of contributory negligence. The negligence of the telephone company was not negligence of action but was negligence of omission, and its omission of duty in this instance was to allow an unbroken connection between the wrong and the injury, or, in other words, it failed to prevent the natural sequence of events, set in motion by the original negligence, from resulting in injury to appellee, and thereby permitted the alleged liability of all the appellants to attach for the result of their concurring negligence. *Gillespie* v. *Great Northern R. Co.* (1913), 124 Minn. 1, 8, 144 N. W. 466.

An independent intervening agency which will protect the original wrongdoer must be the efficient cause of the injury of which complaint is made, and not a negligent act or omission of such agency concurring with or succeeding the original negligence permitted by the original wrongdoer to continue and which in the natural course of events results in such injury. In short, the result prevented by the intervening agency, must be the injury complained of, and not the requital for that injury. *Chicago, etc., R. Co.* v. *Pritchard* (1906), 168 Ind. 398, 79 N. E. 508, 81 N. E. 78, 9 L. R. A. (N. S.) 857; *King* v. *Inland Steel Co., supra; Dodge Mfg. Co.* v. *Kronewitter* (1914), 57 Ind. App. 190, 104 N. E. 99; *Cleveland, etc., R. Co.* v.

*Clark, supra; Gillespie* v. *Great Northern R. Co., supra,* 7; *Lane* v. *Atlantic Works* (1872), 111 Mass. 136; *Burke* v. *Hodge* (1914), 217 Mass. 182, 104 N. E. 450; *Leahy* v. *Standard Oil Co.* (1916), 224 Mass. 352, 359, 112 N. E. 950.

On the part of the contractors it is said that the alleged acts of trespass could not be remedied by them without further acts of trespass, consequently the only thing left for them to do was to notify the owner of the pole, and, this done, they had performed their duty to such owner and its employes thereby insulating their negligence as to such parties. There is no claim of notice to such employes, nor does it appear that the telephone company was notified by these contractors, but the jury found that the telephone company actually knew that the pole in question had been cut. If, as these appellants contend, the telephone company had knowledge, however received, of the trespass, it was required to warn appellee thereof; still its failure to do so would not insulate the negligence of its coappellants on the ground of any duty owing by it to them. It did owe a duty to its servants to warn them of the negligent acts creating unnatural hazards, if such they were—a question for the jury—and its failure so to do was negligence, in that it permitted appellee to meet, unknown to him, a latent danger which did not usually pertain to the character of the work he was employed to perform. *Southern R. Co.* v. *Howerton* (1914), 182 Ind. 208, 105 N. E. 1025, 106 N. E. 369. These contractors were bound to know from common knowledge that sooner or later the pole in question as it stood would be subjected to rightful activities, and in its weakened condition, unless in some manner strengthened, would

endanger the life and limb of the servants of the telephone company employed as linemen. To such person or persons, as well as to the owner of the pole, it was their duty, implied by law, to repair the same or by affirmative acts give notice to them of its dangerous condition. The general verdict is a finding that the contractors failed to perform that duty and by reason of such failure appellee was injured. "It is no defense for a wrongdoer that a third party shared the guilt of the same wrongful act, nor can he escape liability for the damages he has caused on the ground that the wrongful act of a third party contributed to the injury." *Chicago, etc., R. Co.* v. *Sutton* (1894), 63 Fed. 394, 11 C. C. A. 251.

The general verdict amounted to a finding that appellee was not guilty of contributory negligence, and the answers of the jury to the interrogatories are not in conflict therewith. *Cleveland, etc., R. Co.* v. *Markle* (1918), 187 Ind. 553, 119 N. E. 371. As to the telephone company, the question of contributory negligence is by statute a matter of defense and a question for the jury. Acts 1911 p. 145, §§8020a-8020h Burns 1914; *Inland Steel Co.* v. *King, supra.*

(4)  Appellants insist that the court erred in giving to the jury certain instructions. No. 18 was on the subject of appellants' duty to examine the pole below the surface of the ground. We have fully considered that question in passing on the motion for judgment on the jury's answers to interrogatories. No. 19, relating to the impairment of appellee's physical power and his earning capacity, correctly stated the law. *Kawneer Mfg. Co.* v. *Kalter* (1917), 187 Ind. 99, 118 N. E. 561. Instructions Nos.

11 to 17, inclusive, relating to the effect of the Employers' Liability Act, *supra,* approved March 2, 1911, the telephone company insists should not have been given, for the reason that appellee was occupying the master's place and it was his duty to inspect the pole and that he assumed the risk. Meeting this appellant's objection, it may be said that there is evidence tending to show that one Blackburn was the superintendent of the telephone company and its inspector as well. He inspected the pole in question three or four days before the accident. He saw fresh dirt piled around the pole, but did not disturb it to make an examination of the pole below the surface of the ground. From the condition of the pole at the top he thought it was safe. He did not use an instrument for testing its decayed condition. Under the state of the evidence disclosed by the record, the objections to these instructions cannot be sustained.

Instructions Nos. 17, 26 and 27 tendered by Watson and Company were by the court refused, and Watson and Company complain of this action. Instruction No. 17 proceeds upon the theory that, if the pole was defective as charged, the telephone company violated its duty in permitting appellee to work upon it, and this violation of duty was the proximate cause of the injury, as well as the intervening cause between any negligence of Watson and Company and the injury. By No. 26 the court was requested to instruct the jury that, if appellee knew the pole had long been in use, it was his duty to inspect it at or below the surface of the ground and, if by such inspection he could have discovered its condition, then he could not recover against Watson and Company. The questions presented by these

two instructions we have already considered and the conclusion reached is against their contention. No. 27 in effect would have told the jury that, if the acts of Watson and Company would not have caused the pole to fall under the weight of appellee aside from its weakened condition thereafter caused by other parties chopping into it and pulling on it, then he could not recover against Watson and Company. The rule is well settled in this state that instructions to the jury should be relevant to the issues and pertinent to the evidence in the case. Measuring this instruction by this rule and assuming that an instruction submitting such theory might be authorized in a proper case, we are not persuaded that it should have been given in this case, for the reason that no evidence has been pointed out, nor are we able to find any, furnishing a real basis authorizing its submission to the jury. If Watson and Company was guilty of negligence in cutting the pole, there was no possible guide under this evidence for the jury to follow in determining what part it played, if any, in causing the injury. *Slater* v. *Mersereau* (1876), 64 N. Y. 138.

O'Conner and Son assert that the court erred in refusing to give seven instructions tendered by them. The first four pointed out proceed upon the theory that the negligence of the telephone company was an intervening cause and without which no injury would have occurred. For the reasons heretofore stated, these instructions were properly refused.

It is claimed that instruction No. 12 given at the request of O'Conner and Son, and instruction No. 18 given at the request of appellee, and applying to Watson and Company and O'Conner and Son, are in

direct conflict. The asserted conflict is that: "The last named says that the plaintiff did not owe the duty to inspect the pole, while the first named instructs the jury that it was the duty of the plaintiff."

This court has ruled that, where two or more instructions "are inconsistent and calculated to mislead the jury, or leave them in doubt as to the law, the judgment should be reversed." *Cleveland, etc., R. Co.* v. *Lynn* (1908), 171 Ind. 589, 602, 85 N. E. 999, 86 N. E. 1017. The question then is: Do these instructions leave the minds of the jurors in a state of confusion respecting the duty of appellee to inspect the pole before going upon it? This question should be answered in the negative.

Instruction No. 18 dealt with the question of assumption of risk, while No. 12 was on the subject of contributory negligence. Reading these instructions together, we are of the opinion that the jury would be impressed with the thought that as between these appellants and himself he assumed all of the risk incident to and naturally arising under his employment, but was not required to search for hidden defects negligently caused by them, but under the instruction requested by O'Conner and Son, and given, it was the duty of appellee, in order to free himself from the charge of contributory negligence, to inspect the pole from its base at the ground up; or, in other words, it was his duty to exercise due care and caution for his own safety by inspecting and observing the condition of the pole before attempting to ascend it for any purpose, and failing so to do, and such failure proximately contributed to his injury, O'Conner and Son would be excused from any liability which resulted to him under such circumstances.

Citizens Tel. Co. *v.* Prickett—189 Ind. 141.

Instruction No. 20 was properly refused for the reason that it proceeds first upon the theory that, if the jury found from the evidence that the pole was cut into by one Harry Tucker, then Watson and Company and O'Conner and Son would not be liable for such act, unless they further found that such act of cutting was the proximate cause of appellee's injuries. Our attention has not been called to any evidence, nor have we been able to find any, to which this part of the instruction would be pertinent; on the other hand, from our examination of the evidence there is none whatever tending to prove that Harry Tucker cut the pole. Tucker was the timekeeper for O'Conner and Son, and testified that on July 13, 1914, he saw George Cook chopping the pole, and that it had been cut into prior to that time. Another witness testified as having seen some one in May or June chopping on the pole in the presence of the foreman for Watson and Company. It thus appears that this instruction was not pertinent to the evidence. If for any reason any part of an instruction ought not to be given, the whole instruction should be refused, and such refusal will not be error.

Instruction No. 21 was also properly refused for the reason that it required appellee to make an inspection of the pole below the surface of the ground, and his failure in this respect made him guilty of contributory negligence, and precluded a recovery by him against O'Conner and Son. In other words, the instruction proceeded upon the theory that appellee was bound to make such inspection as a matter of law. For the reason heretofore stated, the ruling of the trial court in this respect must be sustained.

(5)  Were the damages excessive? We have care-

fully examined the evidence disclosed by the record in this case, and from which we cannot say that the amount fixed by the jury is so large that it cannot be explained on any reasonable hypothesis other than from prejudice, passion, partiality, corruption, or that some improper element was taken to account. Having reached this conclusion, we are not permitted under the rulings of this court to interfere with the jury's action in this matter. *Baldwin Piano Co.* v. *Allen* (1917), 187 Ind. 315, 118 N. E. 305; *Kawneer Mfg. Co.* v. *Kalter, supra.*

(6) The telephone company in its separate motion for a new trial insists that the court erred in permitting Harry Tucker, a witness for plaintiff, on cross-examination by O'Conner and Son, and also as witness for them, to testify over its objection as to the condition of the pole. The objection urged was that there was no issue between O'Conner and the telephone company regarding the condition of the pole. There was no error in this ruling. The remedy of the telephone company in this matter was by requested instruction limiting the evidence to the parties against whom it was admissible. *Thistlewaite* v. *Thistlewaite* (1892), 132 Ind. 355, 31 N. E. 946.

It is also claimed that the court erred in refusing to permit witnesses Marryman, Meadows and Blackburn to give opinion as to whether the pole would support the weight of a man working at the top thereof before it was cut. These witnesses had testified fully as to the condition of the pole from an observation of it immediately after it had fallen. There was nothing about the pole difficult to describe. The ground end of it had been taken

up and was on exhibition before the jury. The witnesses did not qualify as experts for the purpose of answering hypothetical questions. There was nothing about the pole or its condition which could not be fully and fairly presented to the jury without an opinion. The question thus presented is within the rule announced by this court in the case of *New Jersey, etc., R. Co.* v. *Tutt* (1906), 168 Ind. 205, 216, 80 N. E. 420, where it is said: "It is the law of this state that a witness will not be allowed to express an opinion upon a subject of which the jury is as well prepared to judge as the witness; or, as generally expressed, he will not be permitted to give his opinion upon the exact question the jury are to decide."

It is next insisted that the burden was on appellee to prove that the telephone company knew of the cut, decayed, and weakened condition of the pole long prior to the accident. While there is an allegation in the complaint charging appellee with such knowledge, yet it was an unnecessary one in order to state a cause of action against the telephone company, for under the act of 1911 (Acts 1911 p. 145, *supra*) the burden was on the telephone company to show that it did not know, or that by the exercise of ordinary care it could not have known, of the dangerous condition of the pole in time to have repaired it prior to the accident. *Indiana Steel, etc., Co.* v. *Studes* (1918), 187 Ind. 469, 119 N. E. 2.

No reversible error having been pointed out, the judgment is therefore affirmed.